COMMERCIAL NATIONAL INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11230. Promulgated June 15, 1928.

*D. N. Burnham, C. P. A.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

656

OPINION.

MILLIKEN: Relative to the plea of limitation, it is clear that the facts of this case bring it within the rules laid down in the case of *Art Metal Works*, 9 B. T. A. 491. Respondent sustained.

The Board has held in a number of cases that the "circulation list" of a newspaper is a capital asset, that it has property value, and may be the subject of barter and sale.

It has been also held that in order to ascertain gain or loss in event of sale the fair market value as of March 1, 1913, may be ascertained and used as the basic figure to compute the gain or loss, and this is so notwithstanding the individual names composing the list may be different and constantly changing. That newspaper lists and insurance weekly debits have value is best evidenced by the fact that they are frequently the subject of barter and sale. Newspaper subscription lists are analogous to industrial insurance weekly debits and decisions relative to the former apply with equal reason to the latter.

In the case of *Union Health & Accident Co.*, 9 B. T. A. 357, the question arose as to the March 1, 1913, value of a weekly debit. The Board recognized that such a list, though fluctuating, might have a value as of March 1, 1913, but ruled that under the facts in the case the evidence was not sufficient to establish said value or to overcome the Commissioner's determination.

In the instant case, we have no such difficulty for the March 1, 1913, amount of the weekly debit is established and expert witnesses testified that its value was twenty-five times its amount. Sales of other weekly debits at that time or near it are shown to have been made at the rate of twenty-five to one. Accordingly, we have determined the March 1, 1913, value of the insurance debit sold in 1919 to be $34,375.

In *Rose C. Pickering*, 5 B. T. A. 670, the fair market value of a newspaper subscription list as of March 1, 1913, was used to show a loss in the sale of the same several years later, and in *Gardner Printing Co.*, 4 B. T. A. 37, the value of a circulation list as of May 15, 1907, was ascertained and used to compute income for 1919 and 1920.

In *Herald-Despatch Co.*, 4 B. T. A. 1096, the Board said in part:

The term circulation, as used in newspaper publishing businesses, comprehends something much broader than what may be characterized as mere subscription lists. As a practical matter it appears to be rather difficult to distinguish it from good will. It possesses many of the attributes of good will, and yet comprises other elements not common to the latter. * * * Circulation, in reality, is the very foundation upon which a newspaper publishing business is built. It is always a matter of first importance to the purchase and sale of a newspaper publication.

So it is with an industrial insurance business. Its weekly debit is one of its most valuable assets, for therein is contained a list of accepted risks and willing customers constituting its business foundation. See also *Gazette Co.*, 6 B. T. A. 1016; *News Publishing Co.*, 6 B. T. A. 1257; *Public Opinion Publishing Co.*, 6 B. T. A. 1255;

*Danville Press*, 1 B. T. A. 1171; and *Pevely Dairy Co.*, 1 B. T. A. 385, where a dairy delivery route was held to be a capital asset.

Petitioner further claims an allowable deduction of $46,424, being for expenditures in promoting, developing and maintaining the " weekly debit " between March 1, 1913, and December 31, 1917. The only evidence of such expenditures is that relative to the pay of petitioner's agents who were paid 15 per cent for collections and a salary in addition. The salary was compensation for new business, some of which was renewal, some replaced lapsed policies, and some represented additional insurance development. That which represented increase might be said to be capital expenditure, but to the extent that the expenditures maintained the number of insured or the total of the " weekly debit " it was an ordinary and necessary business expense and allowable as such in the year when made.

There is not sufficient evidence here as to how this expenditure should be allocated and applied and this deduction cannot be allowed.

Prior to January 1, 1919, petitioner set aside from its receipts the sum of $13,545.95 as a reserve fund. Petitioner asserts that since the setting up of this reserve was not required by law, the amounts included therein should be deemed income in the year they were received.

It was stated by petitioner's counsel at the hearing that the reserve had been deducted in filing the return for 1918. Section 234(a)(11) of the Revenue Act of 1918 permits the deduction in case of insurance companies doing business of the character transacted by petitioner of " such portion of the net addition (not required by law) made within the taxable year to reserve funds as the Commissioner finds to be required for the holders of the policy only." This provision of the statute expressly permits the deductibility of a reserve fund not required by law. The reserve fund to be deducted is determinable by the Commissioner in the exercise of a reasonable discretion. By reason of the fact that the reserve fund was permitted in 1918, we can not assume, in the absence of proof, that the Commissioner erred in so permitting the same. In 1919, the reserve theretofore maintained was released to the general purposes of the petitioner and we see no error in the adding of the same to income for the year in which released.

Petitioner is entitled to have the value of its weekly debit as of March 1, 1913, as found, deducted from the gross sale price. In all other respects respondent's action is approved.

*Judgment will be entered under Rule 50.*