*Decision will be entered under Rule 50.*

CONCORD LUMBER CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35570. Promulgated August 5, 1952.

*Eugene J. Steiner, Esq.,* for the petitioner.
*Charles M. Greenspan, Esq.,* for the respondent.

HILL, *Judge:* We have found as a fact that the petitioner was using both a reserve for bad debts and a direct charge-off of items deemed to be uncollectible. However, in spite of this unorthodox system of accounting and its possible tax effects, the respondent bases his determination in this case upon a disallowance of the $5,494.26 item owed to the petitioner by Schenectady Homes Corporation. The respondent treats this as a bad debt directly charged off and in his notice of deficiency raises no objection to the reserve system which the petitioner claims it had been using since 1941.

In its petition the petitioner alleges that "The Commissioner of Internal Revenue has erroneously disallowed a bad debt deduction in the amount of $5,494.26," but upon trial the petitioner's proof, while hardly clear, tended to establish that it was using both the direct charge-off method for bad debts and the reserve method. The respondent by his answer denies the allegation of petitioner.

The issue before this Court has been narrowly drawn by the pleadings. Our determination is limited to the deductibility of $5,494.26, treated as a business bad debt under the provisions of section 23 (k) (1)

of the Internal Revenue Code and not as a reasonable addition to a reserve for bad debts under that section.[1]

The respondent bases his opposition to the petitioner upon this issue on the following facts. The debtor, Schenectady Homes Corporation, found itself in financial difficulties. The creditors of that Corporation, including the petitioner, entered into an agreement whereby the creditors took over Mohawk Gardens, the principal asset of Schenectady, were to complete and operate that asset and pay off the creditors. The original agreement was amended October 13, 1943. This latter agreement provided that the creditors should release their individual claims and take in lieu thereof preferred stock of Schenectady, and further provided in paragraph SIXTH as follows:

SIXTH: That for all purposes the claims of creditors shall be extinguished and satisfied upon the issuance or transfer of preferred or common stock or some such other certificate of interest as may be decided upon by the committee, which stock or certificate shall be retired by the method of payment herein provided for the payment of claims, and upon retirement thereof shall be transferred by said stock or certificate holder or by the committee, if the same shall have been retained by the committee to Leon Marrano. Said certificates shall be nontransferrable and non-negotiable.

The respondent treats the transaction growing out of the amended agreement as one by which the debt owed by Schenectady to the petitioner was extinguished upon receipt of capital stock in Schenectady. The respondent thus treats the transaction as a sale or exchange and argues that the petitioner's loss, if any, should be treated under section 117 of the Internal Revenue Code. We disagree with the respondent. In form the transaction was an exchange of a claim for preferred stock. However, the substance of the transaction was a subordination agreement. Questions of taxation are determined by what was actually done rather than the declared purpose of those affected. *Weiss* v. *Stern*, 265 U. S. 242; *Commissioner* v. *Court Holding Co.*, 324 U. S. 331.

The amended agreement provided that payment of the creditors' claims should be made and that upon such payment the stock issued in lieu of the claims should be surrendered to the creditors' committee, which in turn was bound to turn the stock over to Leon Marrano, together with the capital stock which he had surrendered to the creditors' committee in order to implement the original agreement.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*      \*      \*      \*      \*      \*      \*

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. \* \* \*

However, all this does not aid the petitioner for its proof is such that we are unable to find that the debt became worthless within the taxable year in question. The record discloses that the stock held by the petitioner was sold in 1947 for over $3,000, but as to the condition of Schenectady Homes Corporation, or the successor of the creditors' committee in operating that corporation's chief asset, in the petitioner's taxable year 1945, we have no information. True, the petitioner did offer testimony as to attempted sales of the preferred stock in 1943, 1944 and 1945, but this testimony tends to establish that the debt was worthless in 1943, or at least is as strong towards establishing that fact for 1943 as for 1945. The petitioner's evidence does not point to any event in the taxable year 1945 tending to crystallize the difficulty of Schenectady Homes Corporation into worthlessness of the claims owed by that Corporation to its creditors. Since this is so, the petitioner has failed in its burden of proof, and we hold for the respondent on this issue.

The respondent contests the reasonableness of the compensation paid by the petitioner to its president, Esther Jacobson, and disallowed $1,000 of the claimed compensation deduction, deciding that $2,900 was reasonable compensation for her services. The issue thus presented is affected by the fact that the petitioner is a close family corporation. The officers and family members are the same. The petitioner's record with respect to the payment of dividends and a comparison between the amount of compensation paid and the net earnings are also factors to be considered, as is the amount of time spent and the type of services rendered by Esther Jacobson. Bernard Jacobson, vice president of the petitioner, devoted his whole day and constant efforts to the petitioner's welfare. Esther Jacobson's services were limited to after-hours' discussions of policy and occasional attendance at the office when her son and her husband were out of town, yet Esther Jacobson's salary was the same as Bernard's for the year in question. From this and a consideration of the other factors mentioned and upon the evidence as a whole, we conclude that the determination of respondent is a reasonable one and that the petitioner has not brought forth evidence sufficient in strength to offset that ruling. We therefore hold that $2,900 was reasonable compensation for Esther Jacobson's services to petitioner in the taxable year.

The petitioner argues that if we hold against it, as we have, on issues 1 and 2, it is entitled to accrue as taxes the amount of New York State franchise tax due for the taxable year based on its net income as determined in this proceeding. We can not sustain this position. Even if this additional tax should be asserted and paid, the deductibility as an expense for the year in question does not follow. *Curran Realty Co.*, 15 T. C. 341. The liability on which the petitioner's claim is based is

contested, as this proceeding proves beyond dispute. The item is not so certain in prospect as to warrant an accrual for the year in question. It can not be an accruable item for the taxable year in question in any event and must accordingly be disallowed.

*Decision will be entered for the respondent.*