ANCHOR CLEANING SERVICE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44647. Filed August 10, 1954.

*Seymour J. Wilner, Esq.*, for the petitioner.
*Donald J. Fortman, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge:* The primary question here is whether petitioner is entitled to deduct the losses sustained in the taxable years by reason of the discontinuance by certain of its customers of their general and window cleaning accounts which accounts petitioner had purchased.

According to the pleadings herein, petitioner seeks to establish such deductions as either trade or business expenses under section 23 (a) of the Internal Revenue Code or as losses sustained by a corporation and not compensated for by insurance or otherwise under section 23 (f) thereof.[2]

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
  In computing net income there shall be allowed as deductions:
  (a) EXPENSES.—
    (1) TRADE OR BUSINESS EXPENSES.—
      (A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *
          *          *          *          *          *          *          *
  (f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

The facts found by us on this record not only do not establish the propriety of the claimed deductions under section 23 (a), *supra*, but to the contrary, tend affirmatively to refute them. It is quite clear that the acquisition of the accounts in question constituted a capital investment and that the principal element of the property so acquired was goodwill. *The Pevely Dairy Co.*, 1 B. T. A. 385. Nor do we understand petitioner seriously to contend otherwise. This being true, the deductions sought cannot be justified under section 23 (a). Furthermore, since the element of goodwill is involved, it is also clear that such deductions are not allowable under section 23 (1). Cf. *Red Wing Malting Co.* v. *Willcuts*, 15 F. 2d 626. See also Regs. 111, sec. 29.23 (1)–3.

With regard to petitioner's claims under section 23 (f), *supra*, the basic disagreement between the parties appears to be as to whether the accounts in question collectively constitute one capital asset or a composite of separate individual capital assets. Petitioner takes the latter view and maintains that the present situation is to be distinguished from those involving unitary business routes or customer lists wherein the aggregate of patrons constitutes the indivisible goodwill of a business entity. It is petitioner's contention that here there was a purchase of separate accounts, so evaluated and bargained for, and acquired for a consideration which equaled the total of the purchase prices individually so assigned to each. On the other hand, respondent takes the position that the accounts in controversy constitute one asset, consisting largely of goodwill, and composed, for the most part, of a list of customers who subscribed for petitioner's services. Respondent, therefore, argues that any increase or decrease in the number of such customers would be merely an incidental fluctuation of the whole listing; that, while such may cause a corresponding fluctuation in the value of the asset, goodwill, the entire asset itself is not thereby lost; and that any loss deduction must await a final disposition thereof. To support such divergent views, both parties cite and strongly rely upon *Metropolitan Laundry Co.* v. *United States*, 100 F. Supp. 803.

In the cited case the taxpayer, at the time of its organization in 1903, acquired certain plants, equipment, and laundry routes in both San Francisco and Oakland in exchange for its capital stock. Thereafter, for a period of approximately 40 years, the taxpayer successfully carried on its laundry business in the two cities. The operation in San Francisco was wholly distinct from that in Oakland, the business in the latter city being carried on under an entirely different name. In 1943, the United States took possession of the taxpayer's San Francisco plant and facilities for the use of the Armed Forces, whereupon the taxpayer was forced to abandon completely its San Francisco laundry routes, although it continued to operate its Oakland plant and to service its routes therein. Thereafter, upon being

restored to possession of its San Francisco plant, the taxpayer immediately resumed operation and tried unsuccessfully for approximately 3 years to regain and re-establish its civilian business. Finally, in 1949, it closed its San Francisco plant and abandoned its laundry routes in that city.

The United States District Court for the Northern District of California, Southern Division, sustained the taxpayer in its contention that its capital investment in San Francisco laundry routes was completely lost in 1943 when the routes were abandoned and that such loss was deductible under section 23 (f) of the Code. In the course of its opinion, the court said that:

in a tax sense, a capital asset in the form of a list of customers regularly subscribing for goods or services is not to be regarded as an aggregation of disconnected individual subscribers. Such lists have been treated as unitary structures irrespective of incidental fluctuations and alterations. Houston Natural Gas Corporation v. Commissioner, 4 Cir., 1937, 90 F. 2d 814, natural gas consumers; Meredith Pub. Co. v. Commissioner, 8 Cir., 1933, 64 F. 2d 890, magazine subscribers; Commercial National Insurance Co., 1928, 12 B.T.A. 655, insurance policyholders; Rose C. Pickering, 1926, 5 B.T.A. 670, newspaper subscribers; Appeal of The Danville Press, Inc., 1925, 1 B.T.A. 1171, newspaper subscribers. The gradual replacement of old patrons with new ones is not to be regarded as the exchange of old capital assets for new and different ones, but rather as the process of keeping a continually existing capital asset intact. * * *

The foregoing rationale is that to which respondent adverts for support of his present position. Later in its opinion and in answer to the Government's contention that the loss there sustained by the taxpayer was not recognizable for tax purposes because it was not evidenced by a "closed and completed" transaction since the taxpayer did not completely withdraw from the laundry business at the time its San Francisco routes were lost, the court spoke as follows:

It may be granted that good will cannot exist in the abstract, apart from a going business, and that, generally speaking, the good will of a business cannot be entirely disposed of or destroyed while the business continues. But certainly a going concern can dispose of its business in a particular area or in respect to a particular product or service along with the incident good will without abandoning its entire business. * * * And, * * * so long as the business and the good will disposed of may be assigned a distinct transferable value, the transaction may properly be recognized, for tax purposes, as a closed one. * * *

Petitioner relies upon the language last above quoted to bolster its position. However, it is our considered opinion that petitioner draws scant support therefrom. The significant fact which is the key to the conclusion there reached by the court, as to the propriety of which we do not feel called upon to express an opinion, is not the loss by the taxpayer of part or all of its customers in San Francisco, but rather that following such loss, petitioner abandoned its entire

San Francisco operation. The same is not true here. In this case, following the loss by petitioner of a portion of its customers, there was no abandonment or disposition by it of any identifiable segment of its business. Neither, for aught the record shows, did petitioner put itself in a position where it would be unable to solicit or to serve such customers should they later decide to return to it.

Moreover, the accounts acquired by petitioner through Shapiro from his vendors constituted a single intangible asset in the form of a list of customers, petitioner's contentions to the contrary notwithstanding. That the total price paid was the sum of the monthly billing of each customer, multiplied by $9 or $10, as the case may be, does not make each customer's account a separate unit or asset. The base thus employed was merely a formula for determining the total purchase price to be paid. What petitioner actually is seeking here is a deduction for a partial loss of a capital investment, which deduction is not permitted under the Code. Rather, any such deduction must await the final disposition of the capital investment. Respondent is sustained on this issue.

There remains petitioner's claim with regard to the New York State franchise tax which it asserts will be increased as the result of the holding herein. Insofar as the liability on which such tax is based was proper and uncontested by petitioner, the deficiency for the taxable year before us will be reduced by that portion of the increase in State tax applicable thereto. *Curran Realty Co.*, 15 T. C. 341. However, no deduction is allowed for the year in controversy for the additional State tax that will be payable with respect to the item herein litigated. *Concord Lumber Co.*, 18 T. C. 843. Accordingly, we so hold.

*Decision will be entered under Rule 50.*