Danco Products, Inc. v. Commissioner.
Danco Products, Inc. v. Commissioner
Docket No. 84200.
United States Tax Court
T.C. Memo 1962-52; 1962 Tax Ct. Memo LEXIS 257; 21 T.C.M. (CCH) 287; T.C.M. (RIA) 62052; March 14, 1962
*257 Petitioner corporation purchased all the assets and going business of a proprietorship which engaged in furnishing janitor services to commercial buildings; and, among the assets which it so acquired, were 66 short-term contracts with customers, under which such janitor services were furnished. Held, that petitioner is not entitled to deductions for amortization on such service contracts, including anticipated renewals thereof; for such service contracts together with such anticipated renewals were indivisible from the goodwill of the going business that petitioner purchased; and this precludes the establishment of either separate costs or separate useful lives for said contracts and their possible renewals. Held, further, that petitioner, for similar reasons, is not entitled to deduct as business losses at the times when some of said contracts terminated or were not renewed, allocated portions of the over-all cost of the going business, which petitioner attributed to the costs of such terminated or nonrenewed contracts. James Powers, Esq., 363 N. First Ave., Phoenix, Ariz., for the petitioner. Wesley A. Dierberger, Esq., for the respondent. PIERCE Memorandum Findings of Fact and *258 Opinion PIERCE, Judge: Respondent determined deficiencies in the petitioner's income taxes for years and in amounts as follows: Year
Deficiency
1955
$ 190.84
1956
3,356.15
1957
4,049.13
1958
1,686.81
The issues raised by the pleadings and here presented for decision, are: Where the petitioner corporation purchased all the assets and going business of a proprietorship which furnished janitor service for commercial buildings - (1) Is it entitled to deduct in the taxable years, amortization computed with respect to certain short-term janitor service contracts with customers, which it acquired as part of the assets of said proprietorship business? (2) In the alternative, is petitioner entitled to deduct as a business loss, at the time of the termination or nonrenewal of each such contract, that portion of its total purchase price of the proprietorship business, which it allocated to each such contract? Decision of the foregoing issues will also be dispositive of a related question, as to whether petitioner is entitled to net operating loss carry-back deductions for the years 1955 and 1957. Findings of Fact Some of the facts were stipulated. The stipulation of facts, and all exhibits therein identified, *259 are incorporated herein by reference. Petitioner, Danco Products, Inc., is a corporation which was organized under the laws of the State of Arizona in 1954. Its principal office is in Phoenix. It filed a corporation income tax return for each of the taxable calendar years involved, with the district director of internal revenue at Phoenix. During the period from about 1947 to 1954, an individual named Raymond A. Dancy conducted, as a sole proprietor, a business of furnishing janitor services to owners or tenants of office buildings; and also, during the last two years of said period, he conducted as another phase of his proprietorship operations, a business of selling janitor supplies, such as mops, waxes and detergents. Dancy originally conducted all of his proprietorship activities under the name of "Ray Dancy Janitor Service"; but in about 1952 or 1953, he began to handle some portions of his janitor service business under the second name of "Ace Janitor Service." He adopted this second trade name so that, if certain of his customers became dissatisfied with the personnel that he furnished under one name, he could thereafter furnish new personnel under the other name - and thereby *260 retain the customers. Also, by using the two trade names, he was able to comply, at least in form, with requirements imposed by some of his customers that they receive competitive bids for janitor services; for, by using two names, he could submit one bid in the name of Ray Dancy Janitor Service, and another bid in the name of Ace Janitor Service. About 80 percent of the contracts which Dancy obtained for janitor services, were written contracts; and the other 20 percent were oral contracts. Some of the contracts, both written and oral, were for fixed periods (such as, for not more than one year, or for 6 months) - with the customers having the right to either terminate or renew at the end of such period; but other contracts ran only from month to month, and could be terminated by the customer at any time. In the case of all contracts, whether oral or written, and whether for a fixed term or from month to month, the consideration moving to Dancy was an agreed price per month for his furnishing the janitor services. All of these contracts were personal service contracts. Dancy's proprietorship operations under the two above-mentioned names, were all carried on from the same office; *261 and his proprietorship's receipts from all sources, were deposited in the same bank account. Also, the proprietorship had only one set of books, although the accounts receivable held in the name of Ace Janitor Service were maintained in a separate division in the ledger. Checks received from customers in payment for janitor service were made payable either to Ray Dancy Janitor Service or to Ace Janitor Service, depending upon whether the contract was held in one name or the other. In the fall of 1954, Dancy decided to organize a corporation to take over that portion of his janitor service business which was being conducted in the name of Ace Janitor Service, and also to take over all his business of selling janitor supplies. Accordingly, the petitioner corporation, Danco Products, Inc., was organized on November 1, 1954. On December 16, 1954, Dancy transferred to petitioner: (1) The trade name, "Ace Janitor Service"; (2) all the inventory and equipment of his proprietorship, which he had been using in his sales of janitor supplies; (3) all the equipment and supplies of his proprietorship, which he had been using in that portion of his janitor service business that he was operating *262 under the name of Ace Janitor Service; and (4) all his rights under 13 janitor service contracts (not here involved) which he held under the above-mentioned trade name. In consideration for all these assets, petitioner issued to Dancy, 8,545 shares of its capital stock having a total par value of $8,545. Petitioner, at about the same time, also issued 200 shares of its capital stock to an attorney, in payment for legal services in organizing the corporation; and 1 share to each of its seven incorporators, of which Dancy was one. Dancy thus became the owner of 8,546 of the total 8,758 issued and outstanding shares. As of December 28, 1954, shortly after the above transactions, the balance sheet of petitioner was as follows: ASSETS
Merchandise inventory
$3,944.23
Inventory of stationery & supplies
298.65
Furniture, fixtures & equipment
2,939.90
Cars and trucks
1,300.00
Leasehold improvements
63.20
Organization expense
330.50
Prepaid directors' fees
13.00
Total Assets
$8,889.48
LIABILITIES AND NET WORTH
Accounts payable: R. H. Dancy - part of in-
corpo ating costs
$130.50
R. H. Dancy - balance due on
assets purchased
.98
Total Liabilities
$ 131.48
Capital stock (8,758 shares of com-
mon stock)
8,758.00
Total Liabilities and Net
Worth
$8,889.48
Following *263 the organization of the petitioner corporation, Dancy, with the consent of the other stockholders, continued to operate as a sole proprietor, the janitor service business which he had theretofore conducted under the name of Ray Dancy Janitor Service. While carrying on such proprietorship activities, Dancy served also as vice president and general manager of petitioner, which was carrying on a similar janitor service business under the name of Ace Janitor Service. Both the petitioner and Dancy's proprietorship conducted their business operations from the same office; and, insofar as janitor service operations were concerned, they both used the same personnel, interchangeably. Also following the incorporation of petitioner, Dancy, as the proprietor of Ray Dancy Janitor Service, handled only those janitor service contracts which he had theretofore held in that name; and, pursuant to an understanding with his fellow shareholders, he sought no new contracts in his individual capacity, but channeled all new janitor service business to petitioner. Dancy did, however, continue to use the name of Ray Dancy Janitor Service in seeking new business, to this extent: In certain situations where *264 a customer required the submission of competitive bids, Dancy would submit one bid in the name of his proprietorship, and he would submit another bid on behalf of petitioner, under the name of Ace Janitor Service. But, in these situations, he always arranged to make his proprietorship bid higher than the bid he submitted on behalf of petitioner, so that the latter would be assured of obtaining the contract. Owing to the above-mentioned practice of using the same personnel for petitioner's business and for his proprietorship's business, dissatisfaction developed among some of petitioner's shareholders who believed that too much labor cost was being charged to petitioner's jobs, and too little to Dancy's proprietorship jobs. These shareholders thereupon proposed that petitioner purchase from Dancy, the assets of the Ray Dancy Janitor Service. Accordingly petitioner, with a view to eliminating the above problem and also to strengthen its own financial position, bought from Dancy on November 1, 1955, all of the assets of his Ray Dancy Janitor Service, at a price of $60,000, evidenced by a promissory note of petitioner, which was payable over a 5-year period in installments of $1,000 per *265 month. The purchase was made effective as of November 1, 1955. It was agreed by the parties that, as one of the assets so purchased, petitioner would acquire the trade name, "Ray Dancy Janitor Service." The said $60,000 purchase price was fixed pursuant to the recommendation of petitioner's accountant, who based said price: (1) Partly upon the accountant's estimate of the amount which petitioner probably would realize from the proprietorship's janitor service contracts, over a period of approximately 10 2/3 months from the date of purchase; (2) partly upon the book value of the proprietorship's tangible assets and prepaid items; and (3) partly upon a value of $1 attributed to the name "Ray Dancy Janitor Service." A written contract was prepared some time later, in which the purchase price was shown to have been allocated among the above groups of assets, as follows: Supplies inventory; and name "Ray
Dancy Janitor Service" at $1.00
$ 841.00
Cupboards
172.00
Safe
25.00
Vacuum cleaner
200.00
Steam cleaner
112.55
Deposit with supplier
30.00
Deposit with Industrial Commission
270.00
Total physical assets
$ 1,650.55
Janitorial service contract rights
($60,000 - $1,650.55)
58,349.45
Total assets
$60,000.00
After *266 so acquiring Dancy's rights under the above-mentioned 66 contracts (including any anticipated renewals thereof), petitioner continued to service the same, and to bill the customers, under the name of Ray Dancy Janitor Service. It reported on its returns for the years involved, gross income from services so rendered by it under said contracts and the renewals thereof, as follows: Year
Gross Income Derived
1955
$ 11,331.71 *
1956
60,344.45
1957
51,650.06
1958
48,742.84
Total
$172,069.06
During the years 1956 through 1958, 45 of said 66 contracts and renewals thereof, were terminated or not renewed by the customers, as follows: Number of Con-
tracts Terminated
Year
or Not Renewed
1956
16
1957
19
1958
10
Total
45
Petitioner deducted on its Federal income tax return for each of the years here involved, an amount for "amortization" of the $58,349.45 "cost," which it had allocated, from the purchase price of the entire business, to "janitorial service contract rights." The amount so deducted in each year here involved, was as follows: 1955
$ 2,203.85
1956
11,736.99
1957
10,046.02
1958
9,480.04
The respondent, in his statutory notice of *267 deficiency, disallowed the deductions which petitioner claimed on its returns for 1956, 1957 and 1958, for amortization of the allocated cost of "janitorial service contract rights." Respondent explained such action for the year 1956, as follows: (a) It has been determined that the useful life of the janitorial service contract rights, acquired in connection with the purchase of a going business, is of indefinite duration and, it has also been determined that the amount of $58,349.45, shown on your return as the cost of such contract rights, repented [repended] the total cost of all the intangible assets acquired in connection with the purchase of the going business, which consisted of good will, the elimination of competition, and the service contract rights. Therefore, since the useful life of the contract rights cannot be estimated with reasonable accuracy and, since the portion of the lump-sum cost of the intangible assets which is allowable to the contract rights has not been established, the deduction claimed for amortization of the contract rights, in the amount of $11,736.99, is disallowed in accordance with the provisions of Section 1.167(a)-3 of the regulation under the 1954 Internal Revenue Code. *268 Similar explanations were given by respondent for his disallowance of the amortization deductions which petitioner had claimed for the years 1957 and 1958. As regards the year 1955, respondent did not specifically disallow the amortization deduction which petitioner had claimed on its return for that year; but rather, he determined the deficiency for said year, solely by disallowing the claimed net operating loss carry-back deduction which had been computed with respect to the subsequent years 1956 and 1958. Opinion 1. The respondent has disallowed the deductions for amortization of the Ray Dancy Janitor Service contracts on two principal grounds: (1) That the useful life of such contracts, including anticipated renewals thereof, was of indefinite duration, and hence not amortizable; and (2) that the "cost" allocated by petitioner to its rights under such contracts ($58,349.45) actually was attributable, not only to the contracts themselves, but also to the goodwill of the proprietorship business, and to the elimination of competition from Dancy - that in other words, such amount was part of the unitary price which petitioner paid, for the going proprietorship business, as a whole. *269 We think that respondent's action and determinations in this regard, are correct. It is a well settled principle that, before a taxpayer is entitled to amortize any intangible asset, there are two factors which must first be proven: (1) There must be a definite cost established for the intangible asset; and (2) the useful life of such asset must be susceptible of estimation, with reasonable certainty. See sec. 1.167(a)-3, Income Tax Regs. In our opinion, petitioner has failed to prove either of these indispensable factors. First, considering the "cost" factor, the evidence herein establishes to our satisfaction that petitioner acquired more for the $58,349.45 than just the contract rights. Specifically, we are satisfied that petitioner acquired also, the goodwill which attached to the trade name and the going business of the Ray Dancy Janitor Service, including the probability that customers would continue to renew their contracts under that name. The evidence of record, however, is not sufficient to warrant an allocation of any particular portion of the $58,349.45, either to the goodwill alone, or to the contracts and the probability of their renewal, alone. The result is, therefore, *270 that petitioner is here seeking a deduction for amortization of what is, in reality, an agglomeration of intangible assets - one unidentifiable portion of which (goodwill) is clearly not amortizable. This, the petitioner cannot do. Petitioner's directors were careful to specify that the corporation was to obtain the trade name, Ray Dancy Janitor Service; and since petitioner did in fact continue to operate under said name, it is reasonable to assume that petitioner acquired new customers or new business through use of this name, to replace at least some of the contracts which were terminated or not renewed. The burden was upon petitioner to establish that it did not acquire any such new customers or new business; and petitioner has not done so. The circumstances of the instant case are similar to those in at least three other cases decided by this Court: Anchor Cleaning Service, Inc., 22 T.C. 1029; Thrifticheck Service Corporation, 33 T.C. 1038, affd. (C.A. 2) 287 F. 2d 1; and Richard M. Boe, 35 T.C. 720. In each of these cases, the taxpayer had acquired a group of contracts with customers, in connection with the acquisition of a going personal service business. In each of said *271 cases, we held that the group of contracts constituted a single intangible asset, the principal element of which was goodwill; and we also held that the taxpayers were not entitled, either to deductions for amortization of their claimed costs for such contracts, or to deductions for losses upon the termination of particular contracts. Second, turning to the other above-mentioned indispensable element for an amortization deduction - i.e., that the useful life of the intangible must be susceptible of estimation with reasonable certainty - we here again must conclude that petitioner has failed to carry its burden of proof. Dancy testified that 20 percent of the 66 contracts were oral and ran merely from month to month; and that the other 80 percent were written contracts which had fixed terms of not more than 1 year, or 6 months, and as to which the customers could either terminate or not renew the same at the end of such periods. Thus, it is clear to us, that there is no way to estimate, with any degree of reasonable certainty, how long the customers under these 66 contracts might continue to do business with petitioner. We hold that petitioner has not proven, either the cost of the *272 contracts themselves (apart from the goodwill element), or the useful life thereof. It has, accordingly, failed to establish error in the respondent's determination; and it is not entitled to any deductions for amortization. We sustain the respondent on this issue. 2. Petitioner has contended, in the alternative, that it should be allowed to deduct as an ordinary business loss under section 165 of the 1954 Code, in each of the taxable years 1956, 1957, and 1958, that portion of its aggregate cost of the Ray Dancy Janitor Service business, which it allocated to particular contracts that the customers terminated or did not renew in each of said years. What we have said above, respecting goodwill attaching to the group of 66 contracts, and respecting the resultant likelihood that new contracts were acquired to replace those that were terminated or not renewed, is dispositive of the present issue, also. The following statement from our opinion in the Thrifticheck case, supra, wherein we disposed of an identical contention made by the taxpayer therein, is here apposite: The cancellation of a [particular] contract would not destroy the value of the larger asset of which it was a part, but *273 would merely reduce its value, which might be restored by the acquisition of new customers. * * * in our opinion the petitioner will not be entitled to deduct any cost of the contracts which it purchased until its customer structure becomes worthless or is disposed of. [33 T.C., at p. 1047] We decide this alternative issue also against the petitioner. The net operating loss carry-back deductions claimed in 1955 and 1957, were properly disallowed. Decision will be entered for the respondent. Footnotes
*. Represents gross income derived during 2-month period of November and December 1955.↩