RALPH A. SKILKEN AND LORETTA SKILKEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6302-66.    Filed September 17, 1968.

*Hugh E. Wall, Jr.*, for the petitioners.
*Robert A. Roberts*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax for the taxable years ending December 31, 1962, and December 31, 1963, in the amounts of $5,742.18 and $4,887.71, respectively. The only question is whether the partnership of which the petitioner is a partner may deduct certain amounts as losses under section 165, I.R.C. 1954,[1] due to loss of certain locations for the vending machines of the partnership.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference.

Petitioners Ralph A. Skilken (herein referred to as petitioner or Ralph) and his wife Loretta Skilken, resided in Dayton, Ohio, at the time their petition to this Court was filed. For the taxable years 1962 and 1963, petitioner and his wife filed joint Federal income tax returns with the district director of internal revenue, Cincinnati, Ohio.

Petitioner was a member of a partnership known as Acme-Miami Vending Service, hereinafter referred to as Acme-Miami or the partnership, with its principal place of business in Dayton, Ohio. Petitioner owned a 33⅓-percent interest in the partnership with the remaining 66⅔-percent interest owned by the Sam W. Klein Co., a partnership which consisted of Sam W. Klein, Freda Klein, and Rose Miller.

Acme-Miami was engaged principally in the business of selling cigarettes, candy, and other items through the use of vending machines. For each of the taxable years ending December 31, 1962, and December 31, 1963, the partnership filed its U.S. Partnership Return of Income.

During the taxable year 1962, Acme-Miami acquired the going businesses of seven competitor companies. The following schedule reflects the businesses acquired, the dates of their acquisition, the recorded costs of each business, and the fair market value of the *tangible* assets acquired:

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

| Business acquired by Acme-Miami Vending Service | Date of acquisition | Recorded cost of acquisition | Fair market value of tangible property acquired |
|---|---|---|---|
| A-1 Custom Vending Co | 1- 1-62 | $18, 296. 81 | $18, 296. 81 |
| Ohio Music Service | 1- 1-62 | 53, 137. 61 | 43, 855. 00 |
| Fisher Vending Co | 4-30-62 | 20, 000. 00 | 9, 750. 00 |
| Commercial Music Co | 2-28-62 | 35, 000. 00 | 27, 967. 89 |
| Snack Vending Service, Inc | 2-28-62 | 45, 000. 00 | 34, 400. 40 |
| Miami Cigar & Tobacco Co | 1- 1-62 | [1] 303, 105. 00 | 84, 940. 00 |
| Acme Merchandise Vending Co | 1- 1-62 | [2] 445, 068. 12 | 259, 825. 16 |
| Total | | 919, 607. 54 | 479, 035. 26 |

[1] Includes $3,924.48 for prepaid licenses.
[2] Includes $58,931.50 for other assets, such as accounts receivable, prepaid cigarette stamps, licenses insurance, interest, deposits, and cash value of life insurance policy.

For each of the companies purchased, the partnership examined the books and records of the company about to be purchased in determining the value of the company. As a rule of thumb, the partnership determined the average number of cases of cigarettes sold per week by the machines of the company and multiplied this number by $3,000 to calculate the maximum price to be paid for the business. Petitioner was president of one of the corporations, Miami Cigar & Tobacco Co., whose assets were purchased by the partnership.

The several businesses acquired by Acme-Miami owned and operated vending machines in approximately 922 locations principally in the area of Dayton, Ohio. The following schedule reflects the breakdown by business of the types of products sold by the vending machines:

| Business | Number of locations for— | | |
|---|---|---|---|
| | Cigarettes | Full line [1] | Total |
| A-1 Custom Vending Co | 8 | 4 | 12 |
| Ohio Music Service | | 47 | 47 |
| Fisher Vending Co | 4 | 4 | 8 |
| Commercial Music Co | 4 | 24 | 28 |
| Snack Vending Service, Inc | 9 | 43 | 52 |
| Miami Cigar & Tobacco Co | 272 | 20 | 292 |
| Acme Merchandise Vending Co | 306 | 177 | 483 |
| Total | 603 | 319 | 922 |

[1] Candy, drinks, and food—any product other than cigarettes.

In total, the purchase price paid for the various businesses exceeded the fair market value of the tangible property acquired by the partnership. This excess ($377,716.30) was capitalized and charged to "location costs" on the books of the partnership. Immediately after each acquisition the location cost was allocated on the partnership books among the various vending-machine locations acquired by the business in proportion to the prior sales volume of each location.

The following schedule illustrates the partnership's method of apportioning this cost:

| Seller | Cigarette pack unit sales | Sales volume base | Cost of locations | Factor applied to units or dollars |
|---|---|---|---|---|
| Acme Merchandise Vending Co.: | | | | |
| Cigarettes at 30 cents_____ | 224, 061 | $67, 218. 30 | $93, 445. 63 | $41705 |
| Full-line vending_____ | | 23, 641. 35 | 32, 865. 83 | 1. 39018 |
| | | 90, 859. 65 | 126, 311. 46 | |
| Miami Cigar & Tobacco Co.: | | | | |
| Cigarettes at 30 cents_____ | 190, 415 | 57, 124. 50 | 207, 962. 63 | 1. 09215 |
| Full-line vending_____ | | 1, 724. 45 | 6, 277. 89 | 3. 64051 |
| | | 58, 848. 95 | 214, 240. 52 | |
| Snack Vending Service, Inc.: | | | | |
| Cigarettes at 30 cents_____ | 3, 627 | 1, 088. 10 | 2, 168. 91 | . 59799 |
| Full-line vending_____ | | 4, 229. 49 | 8, 430. 69 | 1. 9933 |
| | | 5, 317. 59 | 10, 599. 60 | |
| Commercial Music Co.: | | | | |
| Cigarettes at 30 cents_____ | 3, 916 | 1, 174. 80 | 1, 751. 85 | . 44736 |
| Juke-box sales_____ | | 3, 540. 95 | 5, 280. 26 | 1. 4912 |
| | | 4, 715. 75 | 7, 032. 11 | |
| Ohio Music Service: | | | | |
| Juke-box sales_____ | | 1, 928. 94 | 9, 282. 61 | . 48122 |
| Fisher Vending Co.: | | | | |
| Cigarettes at 30 cents_____ | 9, 147 | 2, 744. 10 | 4, 625. 32 | . 50566 |
| Full-line vending_____ | | 3, 337. 04 | 5, 624. 68 | 1. 68555 |
| | | 6, 081. 14 | 10, 250. 00 | |
| Total cost of locations_____ | | | 377, 716. 30 | |
| Cigarette location costs_____ | | | $309, 954. 34 | |
| Full-line location costs_____ | | | 53, 199. 09 | |
| Music location costs_____ | | | 14, 562. 87 | |
| | | | 377, 716. 30 | |

In each of the acquisitions, the trade name, trademark, and good-will were transferred to the partnership along with the tangible assets of the purchased company. However, the partnership did not use the name of the former owners, but began to operate the machines under the partnership's name. In some instances, the owners of the premises where the vending machines of the acquired companies were located, did not know the vending business had been sold. The majority of the employees of the several businesses acquired by Acme-Miami became employees of the partnership.

During the taxable years in question, the partnership employed two men for the purpose of obtaining new locations for Acme-Miami's vending machines.

Except in a few instances, insignificant for our purpose, there were no leases or other agreements in effect which guaranteed the part-

nership the continued use of the vending-machine locations. The agreements were oral, terminable at the will of either party, and provided that the partnership pay over to the owners of the locations a certain portion of the receipts of the machines for the partnership's use of the premises in placing machines. During the taxable years 1962 and 1963, Acme-Miami lost 150 and 102 vending-machine locations, respectively. Whatever rights there were to these locations were acquired by the partnership when it purchased the other companies. The following table sets forth the number of locations lost, the taxable year in which the locations were lost, and not reacquired, and the purchased businesses from which the locations were acquired:

| Source of location | Number of locations lost in— | |
|---|---|---|
| | *1962* | *1963* |
| Acme Merchandise | 91 | 59 |
| Miami Cigarette | 50 | 38 |
| Snack Vending | 3 | 5 |
| Commercial & Ohio | 5 | |
| Fisher | 1 | |
| Total | 150 | 102 |

For the taxable years in question, the location costs allocated by the partnership to the various locations which were lost and not reacquired amounted to $35,885.86 for 1962 and $29,943.54 for 1963. These amounts were deducted as losses in the partnership's tax returns for the 2 years.

In the statutory notice of deficiency, the Commissioner disallowed deduction for these lost locations as partnership expenses with the following explanation:

Explanation of Adjustment, Year Ended Dec. 31, 1962

It is held that the amount of $35,885.86 [$29,943.54 for 1963], deducted on the return of Acme-Miami Vending Service, a partnership, as "lost locations," is not allowable under section 165 of the Internal Revenue Code. Accordingly, your distributive share of the partnership net income is increased by $11,961.65 [$9,981.19 for 1963].

OPINION

The only issue for our determination is whether the partnership may deduct as losses under section 165,[2] amounts which it allocated to

_____

[2] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business ;

certain oral location agreements which were terminated during the taxable years. Ralph is the petitioner in this case because as a partner in Acme-Miami, he must recognize as income his distributive share of the partnership's taxable income or loss under section 701 [3] and 702(a) (9).[4] In general, section 703(a) [5] provides that the taxable income of the partnership shall be computed in the same manner as that of an individual, thus making section 165 losses deductible in computing the partnership's income.

The partnership purchased the location agreements along with the other assets of several companies and unilaterally allocated a portion of the aggregate purchase price to each of the agreements based upon the sales made at the particular location covered by the agreement. These agreements, 922 in number, were terminable either at the will of the partnership or the owner of the premises and provided that the partnership could own and operate certain vending machines there in the meantime. The machines were located and operated on the premises of others and the partnership agreed to pay the owner of the premises a portion of the receipts from the machines for the privilege of operating them there.

It is petitioner's position that these agreements were separate individual "leases" which the partnership purchased and to which an allocable share of the purchase price is attributable. The argument continues, that because the contracts were terminable at will by either party, the partnership properly refrained from amortizing or depreciating the location costs, but properly could write off the purchase price allocated to each location in the year in which the agreement for that location was terminated, as a deduction under section 165.

The Commissioner disallowed deduction to the partnership for the claimed "losses." He contends that these agreements are similar to "customer lists" and as such should not be accounted for separately, but lumped together as a single asset and treated as goodwill. Accordingly, he argues that no deduction is allowable for partial losses, but must await the final disposition or termination of all the rights under these agreements.

---

[3] SEC. 701. PARTNERS, NOT PARTNERSHIP, SUBJECT TO TAX.

A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

[4] SEC. 702. INCOME AND CREDIT OF PARTNER.

(a) GENERAL RULE.—In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—

   *       *       *       *       *       *       *

(9) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.

[5] SEC. 703. PARTNERSHIP COMPUTATIONS.

(a) INCOME AND DEDUCTIONS.—The taxable income of a partnership shall be computed in the same manner as in the case of an individual except that—

In support of his argument, the Commissioner quotes the following from *Thrifticheck Service Corporation*, 33 T.C. 1038, 1047 (1960) :

The cancellation of a [particular] contract would not destroy the value of the larger asset of which it was a part, but would merely reduce its value, which might be restored by the acquisition of new customers * * * in our opinion the petitioner will not be entitled to deduct any cost of the contracts which it purchased until its customer structure becomes worthless or is disposed of.

We think the Commissioner's determination is correct. As we see the transactions involved, the partnership purchased going businesses with tangible assets (the vending machines, etc.) and intangible assets (the location rights). No question about the tangible assets is involved. The Commissioner argues that there is no substantial difference between this case and the so-called customer-list cases where we have disallowed deductions either for depreciation of the lists or as "losses" when particular customers of the former owners of a business canceled their contracts or ceased to do business with the new owners, as in *Thrifticheck Service Corporation*, *supra*. We agree. Unlike *David Hoffman*, 48 T.C. 176 (1967), this is not a case where the partnership acquired subsisting leases for definite periods. Concededly the right to place and operate machines in this case was simply at sufferance of either party. These rights are not depreciable, which petitioner admits. The partnership took a chance it would be allowed to continue to operate at the locations listed; or in the alternative, could itself move out of any location. That in acquiring the businesses, the partnership arrived at its overall purchase price by allocating a certain amount to each location based on previous business done at that location does not change the picture. *Anchor Cleaning Service, Inc.*, 22 T.C. 1029 (1954).

Nor do we give validity to petitioner's argument that this is not a "customer list" or "customer structure" case because the owners of the locations were not themselves "customers" of petitioner, i.e., the location owners did not buy from the partnership any goods or services; rather the "customers" of the partnership were those who came to the locations to trade either with the owner or to buy from the vending machines. We think that at least this is a vicarious customer-list case. The partnership bought the opportunity to continue the former vending-machine businesses of the sellers of those businesses. Whether the lists purchased were "location" lists (lists of places where machines could be placed and customers reached), or "customer lists" (the naming of particular customers who put money in the slot of a particular machine) makes no difference.

Neither do we think this is a case like *Metropolitan Laundry Co. v. United States*, 100 F. Supp. 803 (N.D. Cal. 1951), where the taxpayer who operated two laundries, one in San Francisco and one in

Oakland, lost the San Francisco business when the U.S. Government seized its plant there and the District Court allowed a deduction for the cost of the San Francisco laundry routes which the taxpayer abandoned because of the seizure. In effect, petitioner here argues that each of the 922 locations acquired was a separate business and as each location was lost or abandoned, a deductible loss was sustained. We do not accept this argument.

*Decision will be entered for the Commissioner.*

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.