KEITH C. NICKISCH and TERESA J. NICKISCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nickisch v. Commissioner
Docket No. 21659-82.
United States Tax Court
T.C. Memo 1984-275; 1984 Tax Ct. Memo LEXIS 396; 48 T.C.M. (CCH) 152; T.C.M. (RIA) 84275; May 23, 1984. Keith C. Nickisch, pro se. Dean H. Wakayama, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1974
$536.99
1975
498.00
1976
282.29
1977
828.32
1978
601.52
1979
1,659.93
The sole issue for decision is whether petitioners may deduct certain payments made in connection with the acquisition of an accounting practice. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Petitioners, Keith C. Nickisch and *397 Teresa J. Nickisch, resided in Sandpoint, Idaho, when the petition was filed herein. In 1975 and 1976 petitioner Keith C. Nickisch (petitioner) was employed as a certified public accountant by "Leaverton Accounting," an accounting firm (herein the accounting firm) located in Sandpoint, Idaho, and owned by Delbert Leaverton (Leaverton). On January 1, 1977, petitioner agreed to purchase the accounting firm from Leaverton.A written purchase agreement dated January 1, 1977, stated that petitioner was to pay $25,000 for the accounting firm's equipment, $9,978 for its accounts receivable, and $5,000 for Leaverton's covenant not to compete, but no part of the purchase price was allocated to the accounting firm's goodwill. Pursuant to an oral agreement made on the same date petitioner also agreed "to purchase the use of the customer list of Leaverton Accounting for the amount of $65,000," payable at the rate of $500 per month from January 1, 1977, until January 1, 1979, and thereafter during approximately the next nine years at the monthly rate of $500 "plus a cost of living adjustment." [1] Leaverton was 62 years old when these agreements were made. *398 After the January 1, 1977, sale, the accounting firm continued to operate in virtually the same manner as it had before the sale. The accounting firm continued to occupy the same office space, retained the same employees, and continued to service many of the same customers. Leaverton even continued to provide consulting services to the accounting firm for a couple of years. On their 1977, 1978, and 1979 returns, petitioners deducted the payments made "to purchase the use of the customer list" as business expenses.In his notice of deficiency, respondent determined that those payments constituted nondeductible capital expenditures.[2]
OPINION The issue is whether the payments made "to purchase the use of the customer list" are deductible under section 162 [3] as business expenses.Respondent contends that the payments were made solely to acquire a capital asset *399 and are therefore not deductible. Petitioners argue that the customer list was simply being rented from Leaverton and thus the payments are deductible as rental expenses. For the following reasons, we hold for respondent. First, we reject petitioners' assertion that petitioner was merely renting the customer list from Leaverton. Although the terms of the oral agreement are contradictory in this respect, see n. 1, supra, in light of the circumstances in which the agreement was made we are convinced that it effectively resulted in the purchase of the customer list by petitioner. Leaverton was 62 years old and apparently attempting to get completely out of the accounting business when he sold the accounting firm to petitioner. Since the customer list was virtually inextricable from the other assets of the accounting firm, based on the record before us we see no reason why Leaverton would not have wanted to sell petitioner his entire interest in it also.To conclude otherwise would require us to assume that Leaverton intended that the customer list revert to him nearly eleven years later after *400 petitioner made his final payment under the oral agreement. Leaverton would be over 70 years old then and it is extremely unlikely that he would have any use for the customer list at that point. In this respect, we also find it significant that in their agreements the parties did not expressly provide that the customer list would revert to Leaverton. Accordingly, in view of these factors, we conclude that petitioner purchased rather than rented the customer list from Leaverton. Finally, since we have concluded that petitioner purchased the customer list from Leaverton, it is clear that the payments in question were made to acquire a capital asset even if we accept petitioners' assertion that no part of those payments was allocable to the accounting firm's goodwill. See Manhattan Co. of Virginia, Inc. v. Commissioner,50 T.C. 78, 88 (1968). An asset which has value in a taxpayer's business for a period in excess of one year has uniformly been considered to be a capital asset the cost of which is not deductible as a business expense. Boe v. Commissioner,35 T.C. 720, 725 (1961), affd. 307 F.2d 339 (9th Cir. 1962); sec. 1.263(a)-2(a), *401 Income Tax Regs. In Manhattan Co. of Virginia, Inc. v. Commissioner,supra at 86, this Court held that a customer list has value in a taxpayer's business at least as long as one of the individuals on the list continues as a customer of the taxpayer for more than one year. [4] Since it is clear that petitioner continued to serve many of Leaverton's clients more than a year after he took over the business, we must conclude that petitioner's interest in the customer list constituted a capital asset with a useful life of over one year. [5] Accordingly, the payments made to acquire that interest are not deductible.[6]
*402 To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Although we recognize that the "cost of living adjustment" is inconsistent with the specific purchase price of $65,000, the parties herein have stipulated that these were the terms of the oral agreement. See text, infra.↩
2. Respondent asserted deficiencies in 1974, 1975, and 1976 because of petitioners' carryback of investment tax credits which petitioners claimed on their 1977, 1978, and 1979 returns. Resolution of the issue herein will automatically determine the correctness of the asserted deficiencies in 1974, 1975, and 1976.↩
3. All section references are to the Internal Revenue Code of 1954, as amended.↩
4. This Court has held on several occasions that a customer list is a single indivisible asset and not an aggregation of assets, one asset being represented by each customer's name. See Manhattan Co. of Virginia, Inc. v. Commissioner,50 T.C. 78, 87 (1968); Anchor Cleaning Service, Inc. v. Commissioner,22 T.C. 1029 (1954); Thrifticheck Service Corporation v. Commissioner,33 T.C. 1038 (1960), affd. 287 F.2d 1↩ (2d Cir. 1961). Thus, it necessarily follows that petitioner's interest in the customer list will continue to have value to him at least as long as he retains the patronage of any customer on the list. 5. See Sirovatka v. Commissioner,T.C. Memo. 1983-634; Illinois Cereal Mills, Inc. v. Commissioner,T.C. Memo. 1983-469↩. 6. Since petitioners failed to argue in the alternative that they are entitled to depreciation deductions with respect to their interest in the customer list, failed to show that the customer list is separable from the accounting firm's goodwill, and failed to submit evidence regarding the useful life of the customer list, we are unable to hold in the alternative that petitioners are entitled to depreciation deductions. See Manhattan Co. of Virginia, Inc. v. Commissioner,supra.See also Midlantic National Bank v. Commissioner,T.C. Memo. 1983-581↩.