The Hillside Dairy Company v. Commissioner.
Hillside Dairy Co. v. Commissioner
Docket No. 2395.
United States Tax Court
1944 Tax Ct. Memo LEXIS 354; 3 T.C.M. (CCH) 174; T.C.M. (RIA) 44055; February 26, 1944
*354 John B. Oviatt, Esq., 602 Engineers Bldg., Cleveland 14, O., for the petitioner. T. F. Callahan, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves tax deficiencies for the taxable years ended June 30, 1941 and 1942, as follows: Declared
Excess-
Income
Value Excess-
Profits
Year
Tax
Profits Tax
Tax
1941
$ 787.48
1942
3,404.20
$997.75
$1,994.60
The contested issue is whether the amounts of $722 and $6,586.88, expended by the petitioner in the respective years ended June 30, 1941 and 1942 for the purchase of milk routes, represent capital investments or ordinary business expenses. The case was submitted on oral testimony and exhibits. The respondent, at the hearing, conceded error in excluding from the petitioner's equity invested capital the amounts of $18,683.45 and $23,199.22 for the years ended June 30, 1941 and 1942, respectively, representing subscriptions to capital stock. The petitioner conceded that respondent properly disallowed the amount of $3,006.02 for the taxable year ended June 30, 1941, being the cost of a new roof, garage floor, water tower and coil, and the amount of $195.50 *355 for the taxable year ended June 30, 1942, the cost of installing a Viltu condenser. Effect will be given to these concessions in the computation under Rule 50. Findings of Fact The petitioner is a corporation engaged in the wholesale and retail sales of dairy products, including ice cream, and operates a number of milk routes. Its principal place of business is at Cleveland Heights, Ohio
During the taxable years ended June 30, 1941 and 1942, the petitioner expended for customers' lists the respective sums of $722 and $6,586.88, as follows: Year
Vendor
Amount Paid
1941
Dennis Mc Grath
$ 722.00
1942
John Bocan
972.00
Thomas Vilt
572.88
Dwyer Dairies Corp
4,326.00
Bruder Company
716.00
The amount paid each vendor was determined on the basis of $4 for each customer continuing for a period of 90 days to take milk from the petitioner. The amount paid for the purchase of the respective lists of customers was a capital investment. Opinion The petitioner claims the right to deduct as ordinary business expenses the costs of acquiring lists of names of dairy customers served by the vendors. The petitioner concedes it acquired an intangible asset. It argues, however, *356 since it did not acquire the business or tangible assets of the vendors, the expenditures should be treated as similar to soliciting and advertising expenses in promoting business growth. "Good will," says the petitioner, is an intangible that attaches to a going business and is an inseparable part of the tangible assets of the business. By this distinction the petitioner seeks to avoid the decision of this Court in the case of The Pevely Dairy Company, 1 B.T.A. 385. In that case, the petitioner points out, the purchaser acquired the use of tangible assets in addition to the vendor's list of milk customers, while the petitioner only acquired a list of customers. Though usually associated with a particular business, "good will" generally consists of several intangible elements. [1] However, it is capable of and is constantly being valued as a separate asset. [2] This being the fact, we do not think the Pevely case is distinguishable from the case at bar. *357 The rationale of the Pevely case has been repeatedly followed by the Board where "good will" was an issue. In a number of decisions the Board has held the circulation structure of a newspaper to be a capital asset. Danville Press, Inc., 1 B.T.A. 1171; Gardner Printing Co., 4 B.T.A. 37; Herald-Despatch Co., 4 B.T.A. 1096. We hold that the amounts expended by the petitioner for customers' lists are to be treated as capital investments and not ordinary business expenses. The Pevely Dairy Company, supra. Upon the hearing the petitioner sought to change its position. It contended that in the event the entire cost was not deductible as ordinary expenses it should be allowed a loss to the extent that the customers named in the list purchased ceased, within the taxable year, to remain its customers. The petitioner endeavored to show by evidence that it had lost approximately 30 per cent of the customers so acquired. Passing the question of the right of the petitioner to urge this ground without amendment to its petition, and assuming the character of the *358 offered evidence is legally sufficient for us to find the quantum of the loss, we do not think the petitioner would be helped thereby. The petitioner acquired from each vendor an intangible asset in the form of a list of customers of the total value paid to such vendor. The fact that the total price to be paid was based upon a figure of $4 for each customer retained for a period of 90 days does not make each customer upon the list a separate unit. The base of $4 per customer was merely a formula for determining the total purchase price to be paid each vendor. Thus, what the petitioner is contending for is a partial loss of a capital investment. Neither the Internal Revenue Code nor the Revenue Act of 1942 permits a corporation to take a partial loss on a capital investment of that character. Nor is such a capital asset depreciable. [3] Any deduction for a loss must await the final disposition of such capital investments. Decision will be entered under Rule 50. Footnotes
1. Metropolitan Bank v. St. Louis Dispatch Co., 149 U.S. 436, 446, 37 L. Ed. 799, 13 S. Ct. 944↩. 2. Washburn v. National Wall-Paper Co. et al., 81 F. 17; Rotan v. United States, 43 F.2d 232; aff'd, 56 F.2d 153; Public Opinion Pub. Co. v. Jensen, 76 F.2d 494, 496; Brett v. Ebel, 29 A.D. 256, 51 N.Y.S. 573; Wood v. Whitehead Bros., 165 N.Y. 545; 59 N.E. 357; Manhattan Brewing Co., 6 B.T.A. 952, 960; Stratton Grocery Co., 8 B.T.A. 317, 324↩.
3. I.R.C. § 23, as amended by Revenue Act of 1942; Art. 19.23 (1)-3 Treas. Reg. 103 (1940) and 111 (1943)↩.