**GOLDEN STATE TOWEL AND LINEN SERVICE, LTD.** (1) and Oakland California Towel Company (2)

v.

**The UNITED STATES.**

No. 64–63.

United States Court of Claims.

March 17, 1967.

---

Valentine Brookes, San Francisco, Cal., attorney of record, for plaintiffs. Paul E. Anderson, Richard A. Wilson and Kent, Brookes & Anderson, San Francisco, Cal., of counsel.

Leonard S. Togman, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner, and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

---

* The opinion, findings of fact, and recommended conclusion of law are submitted

OPINION

PER CURIAM:

This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on March 28, 1966. Exceptions to the commissioner's report, opinion and findings were filed by plaintiff, briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation of the commissioner, with slight modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. The commissioner's opinion and conclusion are wholly consistent with Parmelee Transportation Co. v. United States, 351 F.2d 619, 173 Ct.Cl. 139 (1965), which involved the loss of a separate and identifiable line of business which became completely worthless. Plaintiff is therefore not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER *

BERNHARDT, Commissioner:

The plaintiff linen service corporations purchased two competitiors and in the sales agreements allocated specified portions of the purchase prices to the acquisition of customer lists and other enumerated assets both tangible and intangible. They claim the right, under section 165(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 165), to deduct as a loss the cost of acquisition of a purchased customer in the year in which that customer ceased doing business with plaintiffs. The customer lists were capitalized on plaintiffs' books. The issues are whether a customer list is an indivisible asset for tax purposes and, if not, whether plaintiffs have satisfactorily es-

under the order of reference and Rule 57(a).

tablished the cost basis of the lost customers.

Section 165(a) provides:

There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

Sections 1.165–1(b) and 1.165–2(a) (26 C.F.R., Sections 1.165–1 and 1.165–2 (1961)) of the Treasury Regulations on Income Taxes (1954 Code) are relevant. The former provides:

To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

Section 1.165–2(a) provides:

A loss incurred in a business or in a transaction entered into for profit and arising from the sudden termination of the usefulness in such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or where such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a) for the taxable year in which the loss is actually sustained. * * *

In Metropolitan Laundry Co. v. United States, 100 F.Supp. 803 (N.D.Cal.1951), the taxpayer lost all of its San Francisco customers in 1943 when the United States seized its laundry plant for military use, causing Metropolitan to sell its delivery equipment and thus lose not only its customers but the ability to serve them, retaining, however, its Oakland customers. Under section 23(f) of the 1939 Code, the predecessor to section 165(a) of the 1954 Code, Metropolitan deducted the cost basis of its San Francisco routes purchased in 1903. The Commissioner disallowed the deduction for the reasons that the claimed loss was not a "closed and completed transaction" since the taxpayer still conducted its Oakland routes, and

that the loss of its San Francisco routes represented merely a temporary fluctuation in the value of its total customer list. The court sustained the deduction on the ground that Metropolitan's loss of its San Francisco routes was a permanent closed and completed transaction bearing no economic relation to the taxpayer's retained but separate Oakland routes, but endorsed the general rule in these words at page 805:

* * * in a tax sense, a capital asset in the form of a list of customers regularly subscribing for goods or services is not to be regarded as an aggregation of disconnected individual subscribers. Such lists have been treated as unitary structures irrespective of incidental fluctuations and alterations. [citations]. The gradual replacement of old patrons with new ones is not to be regarded as the exchange of old capital assets for new and different ones, but rather as the process of keeping a continually existing capital asset intact.

The court excepted Metropolitan from the general rule that business goodwill cannot be depreciated nor can it be entirely destroyed while the business continues, because the taxpayer's San Francisco goodwill had a "distinct transferable value" separate from its Oakland business and its loss was a closed transaction for tax purposes. The permanency of the loss was graphically demonstrated by the taxpayer's inability to recapture its San Francisco business when it regained its facilities in 1946 but closed down three years later after an unsuccessful effort to reestablish itself in San Francisco.

One cannot say that the plaintiffs' annual crop of terminated customers had a "distinct transferable value" as did the entire body of San Francisco routes in the *Metropolitan Laundry* instance, for whereas the one might well have constituted the subject matter for a sale had *Metropolitan* so wished, it cannot be imagined that the plaintiffs would have been able or desirous of selling to another their right to serve the periodically de-

parting customers. There was no market for a piecemeal sale of customers.

The general rule described in the *Metropolitan Laundry* case, supra, has had wide application in cases where depreciation deductions on customer lists or their equivalents have been unsuccessfully taken. Thrifticheck Service Corp. v. Commissioner of Internal Revenue, 287 F.2d 1 (C.A.2 1961), and cases cited, including The Danville Press, Inc., 1 B.T.A. 1171 (1925), the latter involving attempted depreciation of a subscription list which was among the assets of a newspaper publishing company purchased by the taxpayer, possibly the earliest application of the so-called "indivisible asset" rule.

The "indivisible asset" rule has also been applied to defeat loss deductions. Boe v. Commissioner of Internal Revenue, 307 F.2d 339 (C.A.9, 1962; loss of purchased medical contracts); Hillside Dairy Co., 3 T.C.M. 174 (1944; dairy customer lists); Anchor Cleaning Service, Inc., 22 T.C. 1029 (1954; customer list for window and general cleaning service). There have been distinguishable exceptions. Seaboard Finance Co., 23 T.C.M. 1512 (1964; small loan contracts); Johnson v. United States, 61–1 USTC § 9278, 7 AFTR 2d 793 (W.D.Tex.1961; medical patient charts).

 There is a significant distinction in principle between a depreciation deduction and a loss deduction in the "indivisible asset" category of cases. Depreciation is a form of estimated loss, the estimate being as to the useful life of the depreciable asset. In most of the cited cases involving depreciation deductions, as in Thrifticheck Service Corp. v. Commissioner of Internal Revenue, supra, there was either no basis for determining the average life span for the contracts purchased, or for allocating values among the contracts, although the court conceded in *Thrifticheck* that "Whether, under appropriate methods of allocation or accounting, a deduction might be taken upon cessation of relations with one or more of the banks in question, we do not decide." Customer lists and similar intangible assets have an indefinite useful life, thereby precluding depreciation deductions, whereas life span is immaterial to a loss deduction.

Each of the cited cases involving loss deductions endorses the "indivisible asset" rule, and only one (Metropolitan Laundry Co. v. United States, supra) presents a tenable exception. The others have certain points of dissimilarity with the facts under consideration upon which the plaintiffs seize as grounds for their sharing the *Metropolitan Laundry* exception. In Boe v. Commissioner of Internal Revenue, supra, the court denied loss deductions claimed upon termination of purchased medical service contracts which, as with our plaintiffs' linen service customer lists, were terminable at will. $2,346.27 of the total $272,389.08 consideration for the sale of a contract medical practice in *Boe* was allocated to tangible assets and the balance was assigned as a lump sum without allocation to some 9,000 medical contracts (indiscriminately embracing goodwill, covenant not to compete, accounts receivable, medical and surgical supplies), which the court treated as goodwill or its inseparable nondepreciable equivalent, the distinction being held immaterial. "To us, the essence of good will is the expectancy of continued patronage, for whatever reason." Ibid., 307 F.2d p. 343. The medical contracts were purchased as a single indivisible asset, as the Tax Court correctly found, and therefore, they cannot be amortized under section 23($l$), 26 U.S.C.A. § 23($l$), or individually subject to loss deductions under section 23(e), Internal Revenue Code of 1939, 26 U.S.C.A. § 23(e)." Ibid., p. 343. The cost allotted to each of the terminated contracts by *Boe* for loss purposes was a prorated per capita share of the total, and was held to be arbitrary by the court.

 In the instant case the cost of each lost customer was not provided by the contracts but was computed as that proportion of the sale prices allocated to customer lists which the average weekly billings to the lost customer bore to the

aggregate of such billings for all customers on the lists. This is a somewhat more reliable method of evaluating each customer than in *Boe,* but is nevertheless subject to the valid criticism that the allocation of value to the aggregate customer lists was subjective and arbitrary, nor could it well have been otherwise. It necessitated an implausible separation of customer lists from goodwill, one a mirror reflection of the other, for goodwill= expectancy of continued patronage=customer lists=goodwill. At least, if goodwill and customer lists are not mutually coextensive, the former includes the latter, and the lesser is inextricable from the greater. Cf. Michaels v. Commissioner, 12 T.C. 17 (1949). In the vernacular, goodwill is a customer list with trimmings. The sellers agreed to cooperate in introducing their customers to the plaintiffs. Without such agreement the customer lists would have been of no more utility and value than the same raw information plucked from the Yellow Pages. At one point in their submissions the plaintiffs consider this vital agreement to cooperate to be part of goodwill, yet at another point attribute it as an element of customer lists, a collision in thought illustrating the binding quality of the marriage between goodwill and customer lists, which are but one in contemplation of law. The parties may contract to observe a separation for themselves, but their agreement does not dictate the fact for tax purposes. Finally, the value allocated to the total customer lists by the plaintiffs was merely the residuum after the total sales prices had been successively reduced by values allotted to other tangible and intangible assets. The latter included goodwill, covenants not to compete and, eventually customer lists. While the amounts allocated to these intangibles were seemingly in fair proportions, by their nature they resist precise appraisal, and rest on wholly subjective considerations. Estimates and crude approximations of losses are not sufficient. 5 Mertens Law of Federal Income Taxation (Rev.), sec. 28.05. The total prices were the product of arms-length bargaining between the parties, but the allocations of the prices were strictly the plaintiff's, acquiesced in by the sellers who had little or no tax concern in the allocation of the sales prices among intangibles. A rule-of-thumb formula of $40 to $70 per $1 of weekly sales was used as a rough criterion of the total purchase prices, but this was more an insurance that the bargained prices would lie within accepted industry norms than a standard for setting the prices.

In Hillside Dairy Co., 3 T.C.M. 174 (1944), the taxpayer purchased the customer lists of several competing dairies, and sought to deduct the cost of customers who terminated their patronage. The Tax Court disallowed the claim because the loss of some but not all of the purchased customers was held to represent *merely a partial loss of a single capital asset,* and the loss deduction would have to await the final disposition of the investment. This partial loss theory was applied to disallow a similar claim made in Anchor Cleaning Service, Inc. v. Commissioner, supra. There the taxpayer purchased a cleaning service business consisting principally of lists of customers for window and general cleaning services. The contract assigned each customer a value based upon a formula ($9 or $10 for each dollar of the customer's monthly billings), and the total price was an aggregate of the individual customer values. The seller agreed to refund the value of each customer terminating service within two months of the date of sale. The taxpayer deducted as route expense the cost of acquisition value of those purchased customers who discontinued service in the third and fourth years after the sale. The Tax Court rejected the taxpayer's contention that the purchased customer list constituted "a composite of separate individual capital assets.", holding that it was a single tangible asset, that the base employed for valuation of the list was merely a price formula and did not "make each customer's account a separate unit or asset", and that, unlike the *Metropolitan Laundry* case, supra, in losing occasional customers the taxpayer

had not abandoned an identifiable segment of its business or put itself in a position of being unable to serve such customers in the future, but had merely suffered an incidental fluctuation of the entire list. The present plaintiffs liken themselves to *Metropolitan Laundry* rather than *Anchor Cleaning Service,* in that they consider their losses of purchased customers to be permanent losses of business assets in closed transactions, for the number of such customers who later resumed the service was *de minimus.* The distinction between the plaintiffs' case and that of *Anchor Cleaning Service* is thin. In neither case did the taxpayer place itself in a position where it was unable to serve the lost customers should they later resume service, which was the saving feature in *Metropolitan Laundry.* There is some arguable merit to the plaintiffs' contention that their losses of purchased customers were permanent losses for practical purposes, and that the acquisition or loss of a particular purchased customer had no bearing or effect on the acquisition or loss of any other customer, nor did the temporary retention of a customer later lost have any demonstrable effect on securing other clientele for the plaintiffs. However, these considerations are merged into the integrated concept of a customer list whose only constant is its existence and not its contents.

These conclusions are not defeated or diminished by *Seaboard Finance Co.* and Johnson v. United States, both supra. The *Seaboard* case involves a variant class of asset unlike those to which the "indivisible asset" rule is commonly applied. Seaboard purchased the outstanding loan contracts of several small loan companies and paid a premium on top of the aggregate value of all of the purchase contracts. Each individual loan contract was separately valued according to the balance owed, the borrower's credit record, family situation, etc. The taxpayer sought to depreciate the premium over a period of three to five years. In sustaining the deduction the Tax Court held that the indivisible asset rule did not preclude depreciation deductions where the purchased contracts are binding agreements calling for a fixed payment, or where they have an identifiable value apart from goodwill, or where the purchaser has valued the contracts individually rather than as a group, thus indicating to the sophisticated buyer that they are not fungible.[1] This does not correspond to the case under review, for we are concerned not with depreciation deductions, but with loss deductions for nonbinding contracts not calling for a determinable amount of income over an ascertainable period, which contracts were terminated at will and were not separately valued in the purchase instrument nor susceptible to reasonably accurate valuation. The plaintiffs here acquired merely an expectation of continuing to receive the patronage of the purchased customers, with no enforceable rights thereto.

In Johnson v. United States, supra, the taxpayer physician purchased a medical practice and assigned $25,000 of the $30,000 price to 5,000 patient charts at $5 per chart. The court reallocated $2,-500 of the $25,000 to goodwill (the personal nature of a physician's services rather minimizes the prospects of a transfer by sale of goodwill in the form of succeeding to patients), and the remainder to the charts, explaining:

> The value of the charts was in the medical history of the patient. A chart would be of value only if the patient should go to Dr. Johnson. Without the medical history the doctor would have to secure the information from the patient and use approximately $30.-00 worth of time, for which he would not charge. There was very little value in the charts in securing or inducing the patients to come to Dr. Johnson because the patients did not

1. The Tax Court decision has since been affirmed by the Court of Appeals, 367 F.2d 646 (C.A.9, 1966). The Ninth Circuit's opinion does not support plaintiff here. [footnote by the court]

know he had the charts, and no effort was made to inform them.

In allowing Johnson to depreciate the medical charts over their estimated useful life of six years, it is obvious that the court considered them not as a directory of likely customers but only as a means for the taxpayer to reduce his office costs by avoiding duplication of effort should the same patients seek his services. Again the facts are not comparable to those before us, where plaintiff's customer lists were of no intrinsic value without the sellers' agreements to cooperate in ensuring continued patronage.

■■ Summing up, a purchased terminable-at-will type of customer list is an indivisible business property with an indefinite, nondepreciable life, indistinguishable from—and the principal element of—goodwill, whose ultimate value lies in the expectancy of continued patronage through public acceptance. It is subject to temporary attrition as well as expansion through departure of some customers, acquisition of others, and increase or decrease in the requirements of individual customers. A normal turnover of customers represents merely the ebb and flow of a continuing property status in this species, and does not within ordinary limits give rise to the right to deduct for tax purposes the loss of individual customers. The whole is equal to the sum of its fluctuating parts at any given time, but each individual part enjoys no separate capital standing independent of the whole, for its disappearance affects but does not interrupt or destroy the continued existence of the whole. It is only when all or a substantial, identifiable, vendible portion of the list of customers is terminated permanently, either through extraneous causes or the sudden and involuntary inability of the owner to serve them, that a tax loss may be claimed, and then only where the loss may be adequately measured. For these reasons the plaintiffs are not entitled to recover and their petition is to be dismissed.