**Ralph A. SKILKEN and Loretta Skilken, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 19275.**

United States Court of Appeals
Sixth Circuit.

Dec. 18, 1969.

Hugh E. Wall, Jr., of Coolidge, Wall, Wood & Matusoff, Dayton, Ohio, for appellants.

Daniel B. Rosenbaum, Dept. of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D. C., on brief, for appellee.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

WEICK, Circuit Judge.

In this appeal we are called upon to decide whether a partnership is entitled to deduct as business losses amounts allocated to locations terminable at will, which locations were required in its purchase of vending machine businesses and

were terminated during the taxable years.

Taxpayer, Ralph A. Skilken[1], owned a one-third interest in a partnership known as Acme-Miami Vending Service [Acme-Miami], which sold cigarettes, candy and other items through the use of vending machines. Taxpayer's wife, Loretta Skilken, is a party to these proceedings because she signed a joint income tax return for the taxable years in question.

During 1962 Acme-Miami purchased the businesses of seven competitors in Dayton, Ohio. To determine the price to pay for each of these businesses, a rule of thumb was applied which multiplied the average number of cases of cigarettes sold per week by the machines of the company, times $3,000. Acme-Miami acquired vending machines operating in approximately 922 different locations. The purchase price paid exceeded the fair market value of the tangible property acquired. The excess ($377,716.30) was capitalized and charged to "location costs" on the partnership books.

In each of the seven acquisitions, the trade name, trademark and goodwill were transferred to Acme-Miami. However, the partnership did not use the name of the former owner, but operated the machines under its own name. In some instances the owners of the premises where the vending machines of the acquired companies were located, did not know the vending business had been sold.

With inconsequential exceptions, there were no leases or agreements in effect with the owners of the premises, to guarantee the continued use of the locations. These agreements were oral, terminable at will, and required the partnership to pay a portion of the receipts to the owners of the premises.

1. "Ralph is the petitioner in this case because as a partner in Acme-Miami, he must recognize as income his distributive share of the partnership's taxable income or loss under sections 701 and 702(a) (9). In general section 703(a) provides that the taxable income of the partnership shall be computed in the same manner as that of an individual, thus making section 165 losses deductible in computing the partnership's income." [Footnotes omitted.] App. at 64.

In 1962, 150 locations were lost by reason of terminations of lease contracts; in 1963, 102 locations were lost, and none of them was reacquired. The partnership allocated on its books $35,-885.86 as "location costs" covering the locations which were lost in the year 1962, and $29,943.54 covering those locations lost in the year 1963, and taxpayer deducted these amounts as losses in his tax returns in the respective tax years.

In sustaining the Commissioner's determination of a deficiency, the Tax Court held—

"* * * that these agreements are similar to 'customer lists' and as such should not be accounted for separately, but lumped together as a single asset and treated as good will. Accordingly, * * * no deduction is allowable for partial losses, but must await the final disposition or termination of all the rights under these agreements." (App. at 65)

We affirm.

The sole issue in this appeal is whether the partnership was entitled under § 165 of the Internal Revenue Code of 1954[2] to take as a loss deduction the vending machine "location costs" for locations that were subject to oral, terminable-at-will contracts, which were in fact terminated.

Section 165 allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. In order to be allowable as a deduction, "a loss must be evidenced by closed and completed transactions, fixed by identifiable events." 26 C.F.R. § 165–1(b). The taxpayer urges that loss of the vending machine locations is a closed transaction fixed by identifiable events. It is his position that the purchases from the seven competitors consisted of 922 separate vending machine location agreements, and when 252 of those locations were lost there were closed 252 transactions.

The Tax Court, however, agreed with the Commissioner that the nature of the purchase from the competitors was more akin to a "customer list." In the customer list cases no depreciation has been allowed to taxpayers, on the ground that a customer list is not an asset which has a determinable, limited useful life. Rather, the lists have been treated as indivisible, intangible mass assets—in the nature of goodwill. Thrifticheck Serv. Corp. v. Commissioner of Internal Revenue, 33 T.C. 1038 (1960), aff'd, 287 F.2d 1 (2d Cir. 1961).

In the "customer list" or "mass asset" cases, the courts have most often been faced with the problem of whether the asset was entitled to depreciation or amortization. However, the issue of whether to permit a loss deduction for partial loss presents analogous problems. In the case of depreciation, a determination of the probable economic life span is crucial in order to determine the probable loss of value over a period of years. The determination of a loss deduction under § 165, on the other hand, is concerned with actual economic loss. However, as in the case of depreciation, a determination of the useful economic life of the asset can be crucial to a determination of the nature of the asset and its value, both of which are interrelated concepts.

At the outset, it is clear that a customer list in the present context is not merely a list of names such as one might find in a telephone book. The distinguishing characteristic of the customer list is a pre-existing business relationship based on a continuous course of dealing. The list may consist of a group of existing contracts to deal for a set period of time, e. g., David Hoffman, 48 T.C. 176 (1967), and Thrifticheck Serv. Corp. v. Commissioner of Internal Revenue, supra, or it may consist of less formal arrangements in which the relationship can be terminated at will by either party, e. g., Anchor Cleaning Serv., Inc. v. Commissioner of Internal Revenue, 22 T.C. 1029 (1954).

2. 26 U.S.C. § 701 (1964).

It is clear from the facts in the instant case that we are concerned with the latter situation. The agreements with the owners of the premises where the vending machines were located were oral and terminable at will. Merely to characterize a purchased asset as a customer list does not answer the ultimate question of whether it can be depreciated or amortized, or whether a loss deduction can be taken for loss of some of the customers on the list.

In some instances, the individual elements of the customer list have been treated as separate capital assets which could be depreciated or amortized. In *David Hoffman, supra,* the taxpayer was permitted to depreciate the value of vending machine locations under contracts which he had purchased. Several factors in that case were determinative. There were individual written contracts for the locations. The contracts did not have automatic renewal provisions, but expired on a specific date and were subject to renegotiation. There was vigorous competition for these locations so that the price offered to the location owner was critical. As a result, taxpayer carefully valued the contracts separately. Under these facts, each contract had an individual, ascertainable, useful life and was, therefore, depreciable. Accord, Seaboard Finance Co., 23 T.C.M. 1512, aff'd, 367 F.2d 646 (9th Cir. 1966).

However, *David Hoffman, supra,* should be compared to Sam Scalish, 21 T.C.M. 260 (1962). Although the taxpayer in *Scalish* had purchased vending machine locations under leases of a definite duration, it was held that the amount paid for the contracts could not be amortized. Two principal facts dictated the result. The contracts had automatic renewal dates, and the taxpayer had paid a lump sum for the contracts, *i. e.,* he had not separately valued them. The Court was of the opinion that the nature of the asset purchased was an advantageous business position. Besides

being assured a market for its cigarettes for a definite period of time, the taxpayer was in a position to maintain the old locations and acquire new ones. These advantages did not have a determinable life and could not be amortized. In short, the asset was goodwill. See Boe v. Commissioner of Internal Revenue, 307 F.2d 339, 343 (9th Cir. 1962).

Similar considerations determine whether a deduction should be permitted for the loss of customers from the acquired list.

In Metropolitan Laundry Co. v. United States, 100 F.Supp. 803 (N.D.Cal. 1951)[3], a deduction was permitted for the loss of a portion of a customer list. In that case, taxpayer purchased customer lists of several laundry businesses in San Francisco and Oakland. During World War II the Government seized taxpayer's San Francisco plant for military purposes. After the war, taxpayer, being unable to resume its normal business, abandoned its San Francisco operation and claimed a loss deduction, although it continued the operation of its Oakland business. It was the Commissioner's position that the deduction should not be allowed because the customer lists comprised goodwill which cannot be lost until the business is lost. In this case, the business was still carried on in Oakland. In allowing the deduction, the Court noted that the San Francisco routes were assigned definite values. There was a closed transaction.

"[A] going concern can dispose of its business in a particular area * * * along with the incident good will without abandoning its entire business." 100 F.Supp. at 806.

The goodwill generated by the Oakland business did not carry over to San Francisco which was entirely distinct although the businesses were purchased at the same time.

In Anchor Cleaning Serv., Inc. v. Commissioner of Internal Revenue, 22 T.C. 1029 (1954), on the other hand, the

---

**3.** The case arose under § 23 of the Internal Revenue Code of 1939, which is substantially the same as § 165 of the Internal Revenue Code of 1954.

loss of some of the customers was held not to be a deductible loss. The taxpayer purchased customer lists in the form of personal service accounts. The accounts were terminable at will. The price paid for the lists was a certain sum times the dollar amount per month produced from the billing of each account. After the purchase, some of the customers on the list cancelled their accounts, for which the taxpayer attempted to take a loss deduction. In denying the deduction, the Court distinguished *Metropolitan Laundry, supra,* on the basis that there was no total abandonment in a specified geographical area. The use of the formula keyed to the yield of the individual accounts did not change each account into a capital asset. The lists were treated as a single asset which was purchased because of the advantageous positions afforded taxpayer. They could be lost only when the entire asset was lost, *i. e.,* when the advantageous business position was lost.

We are of the opinion that in this case the asset represented by the locations was essentially goodwill and not 922 separate capital assets.

Goodwill has been well defined in the case of Burke v. Canfield, 74 App.D.C. 6, 121 F.2d 877, 880 (1941):

"[Goodwill] is of course characteristic of a going business and essentially is constituted in the tendency of customers to return for trade to those with whom they are accustomed to deal. Many and varied elements may hold out the lure to return. They include an established trade name, a specific or general location, a reputation for service, personal attention, reasonable prices, etc. For most purposes good will must be dealt with legally in connection with the business of which it has been said to be parasitic." [Footnote omitted]

In light of the discussion above, several factors have led us to the conclusion in the instant case that the locations purchased represent goodwill.

Taxpayer, did not value the locations separately. He has urged, however, that the rule of thumb used is the accepted method in the industry for valuation of vending machine locations and is an accurate method. He relies on *Seaboard Finance Co., supra,* in which taxpayer was permitted depreciation on the cost of certain loan contracts. The value of the loan contracts was determined by what was apparently the acceptable method in the industry. In essence, the purchaser valued the loan contracts by individually rating them by a number of factors which indicated probable performance. While it is true that the method of valuation in the instant case is similar in that it tends to reflect probable future performance in terms of sales at the locations, the similarity ends there. In *Seaboard* there were written, enforceable contracts for definite periods of time. In the instant case the vending machine locations could be cancelled at will by the owners of the premises.

The rule of thumb employed by taxpayer no doubt is an accurate reflection of the average value of vending machine locations in such circumstances. It is not an accurate reflection, however, of the value of any particular location. Had there been contracts of definite duration, as in *David Hoffman, supra,* so that the probable performance of the particular locations could have been determined, the result may have been different.

As the Court in Golden State Towel & Linen Serv., Ltd. v. United States, 373 F.2d 938, 943, 179 Ct.Cl. 300 (1967), said in distinguishing *Seaboard*:

"This does not correspond to the case under review, for we are concerned not with depreciation deductions, but with loss deductions for nonbinding contracts not calling for a determinable amount of income over an ascertainable period, which contracts were terminated at will and were not separately valued in the purchase instrument nor susceptible to reasonably accurate valuation. The plaintiffs here acquired merely an ex-

pectation of continuing to receive the patronage of the purchased customers, with no enforceable rights thereto."

The taxpayer in the instant case paid a lump sum for vending machine locations which he had no guarantee would continue for any period of time. The conclusion is inescapable that taxpayer expected that there would undoubtedly be some loss of customers, while at the same time some new customers would be gained. Taxpayer placed himself in a position to maintain, to the extent possible, the old locations and acquire new ones. This is the essence of goodwill.

The language of *Golden State Towel & Linen Service, supra,* is particularly apt.

"Summing up, a purchased terminable-at-will type of customer list is an indivisible business property with an indefinite, nondepreciable life, indistinguishable from—and the principal element of—goodwill, whose ultimate value lies in the expectancy of continued patronage through public acceptance. It is subject to temporary attrition as well as expansion through departure of some customers, acquisition of others, and increase or decrease in the requirements of individual customers. A normal turnover of customers represents merely the ebb and flow of a continuing property status in this species, and does not within ordinary limits give rise to the right to deduct for tax purposes the loss of individual customers. The whole is equal to the sum of its fluctuating parts at any given time, but each individual part enjoys no separate capital standing independent of the whole, for its disappearance affects but does not interrupt or destroy the continued existence of the whole. It is only when all or a substantial, identifiable, vendible portion of the list of customers is terminated permanently, either through extraneous causes or the sudden and involuntary inability of the owner to serve them, that a tax loss may be claimed, and then only where the loss may be adequately measured." (373 F.2d at 944)

Reliance by taxpayer on the *Metropolitan Laundry* case is misplaced. Here there has been no cessation of business in a geographic area of independent significance. Taxpayer has lost locations in particular buildings within the same geographic area. However, he still has extensive business in the same geographic area. Goodwill is generated by this continuing business. Until such time as the entire business is lost, there is no deductible loss of goodwill.

The decision of the Tax Court is affirmed.