Submit order in accordance herewith.

**WINN–DIXIE MONTGOMERY, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 68–577–S.**

United States District Court
N. D. Alabama, S. D.

Dec. 30, 1969.

Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiff.

E. Ray Acton, Asst. U. S. Atty. for Northern District of Alabama, Birmingham, Ala., for defendant.

LYNNE, Chief Judge.

Plaintiff brought this suit seeking a refund of income taxes paid in the amount of $455,893.16 for the fiscal years ended June 29, 1963, and June 27, 1964. The case was tried on October 21, 22, 23 and 24, 1969. The Court now makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On or about the 20th day of July, 1962, the plaintiff entered into a Purchase Agreement with Hill Grocery Company, Inc., for the sale of all of Hill's then existing assets and business as a going concern, including all assets and rights relating to the operation of its 35 retail stores, but excluding all of Hill's warehouse operations in Birmingham, Alabama.

2. The purchase price of all properties, assets, and rights was an amount equal to the sum of the net book value (as computed in conformity with the provisions of paragraph 4 of the purchase agreement) of such properties, assets and rights plus $4,420,000.

3. The books of Hill Grocery assigned no values to leases, goodwill, going concern value, trade names, trademarks or any other intangible.

4. At no place in the agreement or at any time prior to finalization of the agreement was any attempt made by the parties to the agreement to allocate the $4,420,000 portion of the purchase price which was in excess of book value, to any asset, tangible or intangible.

5. As a part of the sale, Hill Grocery assigned to Winn-Dixie whatever property rights or interest it had in all leases described in Exhibit A to the Purchase Agreement. All leases or leasehold rights held by Hill Grocery were embodied in this Exhibit A. Of the twenty-two leases described therein, four had expired, leaving Hill Grocery with no assignable interest therein. Accordingly, Winn-Dixie received from Hill Grocery an assignment of interest in some eighteen locations. The other four locations contained in Exhibit A, plus ten additional locations described in Exhibit B, were leased by Winn-Dixie from third parties who received no consideration for the leases other than the stipulated rentals.

6. The individual leases were never bargained for in arriving at the purchase price and no valuation or allocation thereto was made by the parties during negotiations. The only allocation of purchase money to leases was made after the fact by Winn-Dixie's accountants without regard to any rights of occupancy beyond the initial lease term. The allocation included all 32 locations ultimately acquired by Winn-Dixie without regard to the origin of the lease or the length of time which Winn-Dixie expected to operate the location.

7. After carefully considering the testimony, the documentary evidence and the expert testimony presented for the plaintiff by Dr. Wendell Earle and for

**1306**

the defendant by Mr. Ronald Ridgeway and Dr. Albert H. Clark, the Court finds that:

a. The assets of Hill Grocery Company which were purchased by Winn-Dixie as a going concern included intangibles in the nature of goodwill or going concern value which were worth in excess of $4,300,000.[1]

b. The leasehold interests acquired by Winn-Dixie from Hill Grocery Company, Inc., had no significant value in excess of the fair rental value of the premises. Any value attributable to the leases was of a nominal nature.[2]

8. Winn-Dixie purchased the operating assets of Hill Grocery Company, including its intangibles, for $4,420,000 in excess of book value. The premium above book value paid by Winn-Dixie was attributable to all the assets, including non-depreciable intangible assets having indeterminate useful lives, rather than solely for existing leasehold interests.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. Deductions from gross income to reflect the diminution in productivity of a wasting asset have been recognized since the taxation of income in the United States began. The rationale is simple—that an income tax should not be levied on funds which represent the consumption of a producing asset because such a tax would be levied upon a return of capital. Section 167 of the Internal Revenue Code of 1954 and the Treasury Regulations on Income Tax which have been promulgated with respect thereto, set forth the statutorily authorized limits for all depreciation deductions. The applicable portion of the statute is as follows:

(a) *General Rule*—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

3. The Regulations pertaining to Section 167 discuss, *inter alia*, the allowance for depreciation (or amortization as the case may be) of intangible assets used in a trade or business or for the production of income. Treasury Regulations on Income Tax (1954 Code), Section 1.167(a)–3, states:

If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation * * *. No deduction for depreciation is allowable with respect to goodwill. * * *

4. That portion of the Regulations quoted above clearly requires that any intangible asset which is to be depreciated for federal income tax purposes must have a determinable useful life which is limited. Goodwill is an example of the type of intangible asset which is not permitted to be amortized because its useful life cannot be calculated with reasonable accuracy. Thrifti Check Service Corp. v. Commissioner of Internal Revenue, 287 F.2d 1 (C.A.2d, 1961); Johnson v. United States (W.D. Tex.), decided February 24, 1961, 61–1 U.S.T.C., par. 9278; Manhattan Co. of Virginia, Inc. v. Commissioner of Internal Revenue, 50 T.C. 78 (1966); Boe v. Commissioner of Internal Revenue, 307 F.2d 339 (C.A.9th, 1962).

---

1. Reports prepared by Ronald W. Ridgeway and Dr. Albert H. Clark.

2. Report prepared by Ronald W. Ridgeway.

5. In its claim for refund, plaintiff asserted a right to a refund of income taxes paid premised upon the fact that the sum of $4,420,000 was paid to Hill Grocery Company as a premium for the assignment of the unexpired term of twenty-five leases which plaintiff obtained at the time of sale and that the premiums so paid represented an intangible asset with a limited useful life with the attendant right to amortize the purchase price over the life of the leases acquired.

██ The plaintiff contends that it paid a premium of $4,420,000 in excess of net book value solely for unexpired leases. Its position is presented in the complaint, although the number of leases allegedly acquired per the complaint differs from the number of leases allegedly acquired per the claim for refund.[3] Plaintiff is thus limited to pressing that contention, for any alternative contention would be a variance from the grounds for recovery asserted in the claim for refund and necessarily fatal to its action to recover taxes paid. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931); United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398 (1938); Carmack v. Scofield, 201 F.2d 360 (C.A.5th, 1953).

6. Even if plaintiff were now allowed to claim that the $4,420,000 was paid for intangible assets other than the unexpired leaseholds acquired, the result would be the same because all other intangible assets acquired had unlimited useful lives and were not subject to amortization for income tax purposes.

7. Plaintiff has totally failed to meet its burden of proof that the premium was paid for the remaining terms of leases held by Hill Grocery Company which were transferred to Winn-Dixie.

8. The Agreement encompassing, in full, the contract between Winn-Dixie and Hill Grocery Company clearly demonstrates that every asset of Hill Grocery Company subject to the Agreement was sold to Winn-Dixie for a total purchase price of the net book value of the assets to be transferred, plus $4,420,000. Paragraph 3 of that Agreement reads as follows:

3. PURCHASE PRICE. The purchase price ("Purchase Price") of all properties, assets and rights described in Paragraph 1 above shall be an amount equal to the sum of the net book value (as computed in accordance with Paragraph 4 below) of such properties, assets and rights as of the close of business on July 28, 1962, and Four Million Four Hundred Twenty Thousand Dollars ($4,420,000).

9. There are no qualifications, limitations, or allocation of any kind appearing in the Agreement applicable to the purchase price. It is indisputable that Winn-Dixie paid a lump sum for all assets subject to the sale. The Agreement itself, moreover, in paragraph 1 clearly shows that the assets subject to the sale included intangibles as well as tangible assets. It provided for the transfer of—

all of the SELLER'S then existing assets *and business as a going concern,* and * * * including without limitation, all of the SELLER'S *existing leases, leaseholds, options, rights, assets and properties, real, personal and mixed of every kind and description wheresoever situated including trademarks,* if any, owned by SELLER, and all of the following items * * *:

\* \* \* \* \* \*

F All the leases described in exhibit A attached * * *

G *All rights to the name of SELLER and or tradename "Hill's" or "Hill Food Stores".*

\* \* \* \* \* \*

---

3. The complaint (p. 4) indicated that the plaintiff is claiming to have paid the $4,420,000 for the assignment of the unexpired portion of thirty-two leases, while the claim for refund (Compl. Exs. A and B) asserts that twenty-five leases were purchased.

**1308**

K * * * *all trademarks and brand names,* if any, owned by SELLER, * * *.[4] (Emphasis supplied.)

10. Plaintiff's position appears to be either that the leaseholds were the only intangibles purchased, or that the leaseholds were the only intangibles having any value and that the $4,420,000 must be allocated to them.

Neither of these alternatives is tenable. Clearly, all of the intangibles were sold and clearly the price of $4,420,000 was allocable to them. It is equally plain that the non-depreciable intangibles had a fair market value in excess of $4,300,000 while any fair market value attributable to the leases acquired was nominal.

■ 11. Moreover, under the facts of this case the plaintiff is prevented by the "mass asset" rule from allocating even a nominal value to the leaseholds acquired. A "mass asset," sometimes referred to as an "indivisible asset," is an aggregate of intangible assets which are grouped together for the convenience of the owner. Boe v. Commissioner of Internal Revenue, 307 F.2d 339 (C.A. 9th, 1962). Such assets are denied amortization because collectively they have no determinable or limited useful life, even though some of the individual components may have limited lives.

One of the more recent Court of Appeals cases where the use of the indivisible asset rule was approved is Commissioner of Internal Revenue v. Seaboard Finance Co., 367 F.2d 646, p. 652 (C.A. 9th, 1966) where the court stated:

The rationale and purpose of the "indivisible asset" rule is to prevent taxpayers from increasing the value of depreciable property to offset the amount paid in excess of book value of assets purchased. This doctrine makes it possible to strike down depreciation deductions for amounts

which should properly be allocated to good will.

■ 12. It has been found that there was no allocation by the parties of the $4,420,000, the excess over book value, to specific classes of intangible assets. There was no allocation or valuation made either with respect to the different classes of intangibles (i. e., goodwill v. leaseholds) or to any individual lease. The undisputed evidence shows that all leases together with other intangible assets were purchased for a lump sum, namely $4,420,000.

The Ninth Circuit in *Seaboard, supra,* reiterated its previous holding that where no part of the purchase price is allocated by the parties to the various items comprising the total intangibles of the business, the indivisible or mass asset rule is applicable. The rule has been consistently followed in cases involving customer lists, Golden State Towel and Linen Service, Ltd. v. United States, 179 Ct.Cl. 300, 373 F.2d 938 (1967); contracts, Thrifti Check Service Corp., *supra,* and, directly on point, leases. Scalish v. Commissioner, decided March 6, 1962 (21 T.C.M. 260); Commercial Credit Industrial Corp. v. Commissioner of Internal Revenue, 47 T.C. 296 (1966).

13. The instances in which courts have allowed a lump-sum purchase price to be fragmented and allocated to individual components of a mass of intangible assets occurred when the parties to the transaction, dealing at arm's length, have mutually bargained for individual assets and specifically allocated a portion of the lump-sum price to each asset. *Seaboard Finance Co., supra.*

14. Such allocation was not made in the instant case and plaintiff cannot now belatedly attempt to alter the income tax consequences of that document for its self-serving purposes. Federal Oil Co. v. Commissioner of Internal Revenue, 385 F.2d 127 (C.A.3d, 1967);

4. The quoted segment of the Agreement omits references to all assets transferred which were carried on the books of Hill Grocery Company. The aggregate of the book values of those omitted assets comprised Hill Grocery Company's "net book value."

Commissioner of Internal Revenue v. Danielson, 378 F.2d 771, 775.

15. Plaintiff has accordingly failed to satisfy its burden of establishing that the $4,420,000 was a sum paid for the purchase of leaseholds individually bargained for, rather than a sum paid for a mass of intangible assets, some or most of which had no limited useful life of pre-determinable duration.

16. Judgment will be entered in favor of the defendant.