**SUNSET FUEL CO., an Oregon corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 72-379.

United States District Court, D. Oregon.

March 1, 1974.

Morris J. Galen, Tonkon, Galen & Baker, Portland, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Portland, Or., James N. Flaherty, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

OPINION

BELLONI, Chief Judge:

The Sunset Fuel Oil Company brought this action for the recovery of $8,644.70 in federal income taxes and assessed in-

terest alleged to have been overpaid by plaintiff for its 1965 and 1967 fiscal years. Jurisdiction is based on 28 U.S.C. 1346(a)(1).

Plaintiff has for many years been engaged in the sale of fuel oil for heating residences and commercial buildings in the Portland, Oregon metropolitan area.

On November 23, 1966, plaintiff acquired an option to purchase certain assets of the Dwyer Division of Publishers Paper Company (Dwyer). Plaintiff exercised that option and on February 28, 1967, purchased from Dwyer four trucks for $14,740 and 1,778 fuel oil customers for $58,920 and, in addition, plaintiff paid Dwyer $14,720 as consideration for a five year noncompete agreement. Neither the portion of the purchase price paid for the trucks nor the consideration paid for the noncompete agreement is involved in this case.

Plaintiff and Dwyer agreed upon a separate price for each of Dwyer's customers, computed by multiplying by four cents the number of gallons of fuel oil purchased by the customer from Dwyer during the twelve month period ended October 31, 1966, adjusted upward 7% for appropriate degree days (recognizing that the base year was warmer than average). The purchase price determined in that manner was paid for each customer. For example, the purchase price for M. M. Murray was $1.12 (based on actual purchases of 25.4 gallons and adjusted purchases of 28 gallons during the base period), while the purchase price for Simonds & Steel Co. was $1,327.64 (based on actual purchases of 29,150 gallons and adjusted purchases of 33,191 gallons during the base period).

Plaintiff's supplier, Richfield Oil Corporation, was anxious to obtain the additional business represented by each of Dwyer's customers. Consequently, Richfield agreed to pay plaintiff the sum of $24,000 to apply on the cost of Dwyer customers. That payment reduced plaintiff's actual cost for each customer by 40.7% to an amount equal to 59.3% of the price paid Dwyer. Plaintiff computed the reduced cost for each Dwyer customer and entered that amount in its records as its basis for the customer.

Plaintiff purchased Dwyer's list of customers in order to expand its sale volume. The new customers often lived alongside of plaintiff's old customers. No new territorial sales area was acquired.

Plaintiff deducted the exact cost of each Dwyer customer which plaintiff lost during the two fiscal years. The Commissioner of Internal Revenue determined that plaintiff was not entitled to deduct these losses. As a result, deficiencies in tax and interest were assessed against and paid by plaintiff. Timely claims for refund were filed by plaintiff for those deficiencies. After disallowance of plaintiff's refund claims, plaintiff timely brought the instant action.

Plaintiff argues that it suffered an actual monetary loss each time one of the Dwyer customers permanently ceased doing business with plaintiff. I agree.

■ As a general rule, there shall be allowed as a deduction any loss suffered by a taxpayer through the destruction, worthlessness, or abandonment of an asset sustained during the taxable year and not compensated for by insurance or otherwise. 26 U.S.C. § 165.

The regulations issued by the Commissioner under section 165 provide in part:

> (b) Nature of loss allowable. To be allowed as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, ·. . . actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss. [26 C.F.R. 1.-165–1]

In the present action, the government contends that the list of customers acquired by plaintiff from Dwyer constituted a mass or indivisible asset which could not be fragmented for loss deduction purposes. In its brief, it argues that a purchaser of a going business acquires not only the specific customers of the selling business, but it also acquires the "customer structure" of the business. In other words, the government feels that plaintiff obtained not merely a flow of additional income from the particular customer who previously dealt with the seller, but also, and more important, a new level of operation and an opportunity to make inroads into markets which have already been opened by the acquired business.

The trouble with the government's argument is that it does not fit the facts of this case. This is not a case where the taxpayer acquired the customer structure of another business in addition to its specific customers. Plaintiff already had a going business and was servicing customers throughout the areas in which Dwyer operated. Plaintiff received no right to use the Dwyer name (except for a very short transitional period), but merely acquired each of the Dwyer fuel oil customers, certain equipment used by Dwyer in delivering fuel oil, and the covenant not to compete for a period of five years. Plaintiff individually valued the Dwyer customers and paid $58,920 for the customer portion of the purchase price. For this sum, plaintiff received a flow of additional income from the customers which continued for as long as the customers did business with plaintiff. Each of these customers was a capital asset, having a basis for gain or loss equal to its cost. When a customer was lost, as in the case of any other business asset, plaintiff was able to deduct the amount of its unrecovered basis. 26 U.S.C. § 165; Super Food, Services v. United States, 416 F.2d 1236 (7th Cir. 1969).

In *Super Food Services*, the taxpayer acquired a group of retail franchise contracts by purchasing and liquidating another corporation. A specific sum was allocated to each contract according to a formula. The taxpayer claimed a depreciation deduction as to contracts it retained at the end of the year and a loss deduction for contracts terminated during the year. The 7th Circuit held that the lower court improperly granted summary judgment in favor of the government.

With respect to the deduction for lost contracts, the court, citing section 165(a) and the regulation issued under that section said:

> Under this regulation, the loss deduction does not depend on whether the retail franchise contracts are depreciable. . . . If taxpayer can prove the cost of the contracts lost during the year, it should be permitted to take a deduction under section 165(a) of the Internal Revenue Code.

The government argued that the retail franchise contracts were purchased by the taxpayer as part of an indivisible or mass asset with lost contracts constantly being replaced by new ones. The court responded that the indivisible asset doctrine has been subjected to strong criticism because the customer structure which may exist in a group of purchased contracts only guarantees patronage for a limited period of time. The purchase of the franchise contract merely provided the taxpayer an opportunity to attempt to maintain the relationship established by its predecessor. The court indicated that the indivisible asset doctrine is inapplicable where the taxpayer has made a reasonable showing that the customers were valued individually in the purchase decision.

In Commissioner v. Seaboard Finance Company, 367 F.2d 646 (9th Cir. 1966), plaintiff finance company acquired the accounts of other small loan businesses and depreciated the individual accounts. The government argued that plaintiff acquired the customer structure of a going business, which is an indivisible

asset. The 9th Circuit held that the indivisible asset rule does not apply where the purchase price was derived by appraising the value of each individual asset separately.

Plaintiff claimed as a deduction under section 165 those customers which it lost each year. It did not choose to claim a depreciation deduction under section 167 reflecting the diminishing value of the customer list. See, Holden Fuel Oil Company v. Commissioner, 479 F.2d 613 (6th Cir. 1973). The amount deductible in each year should be the same under either section because the rate of exhaustion for depreciation purposes should be calculated so as to approximate the actual business experience. Skilken v. Commissioner, 420 F.2d 266, 269 (6th Cir. 1969); *Super Food Services,* supra.

■ Plaintiff purchased individual customers from the Dwyer Fuel Division, each of which constituted a single unitary asset. In making this purchase, plaintiff assessed the quality of the individual customer accounts and valued each according to the previously mentioned formula. The question whether a purchaser of a customer list is acquiring a single mass asset or a group of separate individual assets is frequently a factual question which will depend on the method used to evaluate the acquisition in light of the nature of the business being acquired. Under the circumstances present in this case, I find that the method used by plaintiff was sufficient to value individually each Dwyer customer at the time of purchase.

Judgment is to be entered in favor of plaintiff. Pursuant to stipulation by the parties, the amount of the judgment is a matter of computation to be agreed upon by the parties and submitted to the court.

This opinion constitutes findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).