**CONCORD CONTROL, INC., Petitioner-Appellant, Cross-Appellee,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee, Cross-Appellant.**

Nos. 77–1581, 77–1582.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 10, 1979.

Decided Feb. 25, 1980.

Michael I. Saltzman, New York City, for Concord Control, Inc.

M. Carr Ferguson, Gary Allen, Timothy McBride, Asst. Attys. Gen., Gilbert E. Andrews, Tax Division, Dept. of Justice, Stewart E. Seigel, Chief Counsel, I.R.S., Washington, D.C., for Com'r of Internal Revenue.

Before BROWN, KENNEDY and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The Commissioner of Internal Revenue assessed Concord Control, Inc. with a tax deficiency totaling $481,552.00 for the time period between February 18, 1964 and November 30, 1966. Concord Control petitioned the United States Tax Court for a redetermination of the deficiency, claiming that no deficiency was due. The Tax Court calculated a deficiency of $258,177.00, finding partly in favor of Concord Control and partly in favor of the Commissioner. Both parties have appealed the decision of the Tax Court.

This case concerns the determination of the basis of taxpayer's tangible and intangible assets for purposes of depreciation. In 1959, K-D Lamp Division was a division of Automatic Burner Company, which was a subsidiary of Northeast Capital. Northeast Capital was controlled by four persons: Johnson, Fierman, Kaelin, and Hedden. In 1959, Duplan Corporation, which was controlled by the same four persons, bought K-D Lamp Division from Northeast Capital. In 1964, Duplan sold K-D Lamp Division to Interim Lamp Company, controlled by Stone. Stone immediately changed the name of the company to K-D Lamp Company. In 1966, Stone acquired the stock of Concord Control and merged K-D Lamp Company into Concord Control. Our tax problem concerns the 1964 sale by Duplan to the Interim Lamp Company.

The 1964 contract of sale was negotiated between Johnson and Stone. Johnson insisted on selling the company at its fair market value. Stone obtained the services of an appraiser to determine the fair market value of the company's assets. The same appraiser had been used in the 1959 sale, so much of the information needed was already in the appraiser's first report. On the basis of the appraiser's report, Stone paid the fair market value less a discount for cash payment. The sales contract listed the price of each group of assets separately. The sales price for all intangible assets, such as goodwill, was $1.00. The parties believed that the company had no existing goodwill, because of some existing business problems and because it was in a very competitive market. The negotiations for a sales price did not discuss the sale of goodwill. The sales contract also included a price for "going concern value" in the $1.00 for intangible assets.

Concord Control calculated its depreciation losses for its tax reports using the listed sales prices of the tangible assets. The Commissioner determined, after his own appraisal, that the sales contract overly allocated the prices to depreciable tangible assets and covered up the prices for the nondepreciable intangible assets of goodwill and going concern value. Therefore, the Commissioner assessed a tax deficiency by reallocating the sales price among the tangible and intangible assets and reducing the basis for depreciation.

The Tax Court found for Concord Control that the 1964 sale of the company did not include goodwill. The Tax Court found first that the sales contract was the result of arms-length bargaining, reflected the true intentions of the parties and was based on a bona fide appraisal. Also, neither Duplan or Concord Control listed goodwill as an asset in their books. Therefore, the sales contract was found to be deserving of respect in that no goodwill was sold. As a supporting ground, the Tax Court found that the company could not expect continued patronage or competitive advantage and therefore possessed no goodwill that could have been sold.

The Tax Court held against Concord Control by finding that the purchase price did include substantial going concern value. Its reasoning was:

> [Concord Control] clearly did acquire an ongoing business that was earning money, had a trained staff of employees, had a product line presently ready for sale and equipment ready for immediate use. Simply stated, the purchase price paid by petitioner for the various assets acquired in 1964 included substantial going concern value which, as distinguished from goodwill, is the increase in the value of assets due to their existence as an integral part of an ongoing business.

App. 82.

The Tax Court then had to determine the portion of the purchase price for each asset attributable to going concern value. The Tax Court stated:

> The record is not entirely clear on this issue and contains no satisfactory formula for dividing the price paid for each asset between the base price of that asset and its going concern value. However, an allocation is required. Based upon a careful consideration of the record, we think we are justified in making the following allocations . . .

App. 83. It allocated a percentage of the purchase price to going concern value, citing *Cohan v. Commissioner of Internal Revenue*, 39 F.2d 540 (2d Cir. 1930), as authority for making the allocations.

The Tax Court found, following a motion for reconsideration by Concord Control, that the useful life of the tools, dies, and jigs was five years. It had originally determined a useful life of ten years.

Concord Control argues on appeal that the Tax Court committed an error of law by automatically finding the existence of going concern value in the 1964 purchase price. We do not read the Tax Court's opinion as using such a *per se* rule and find the argument unmeritorious.

■ Concord Control contends that the Tax Court was clearly erroneous in finding the existence of going concern value. The burden of proof rests on the taxpayer in challenging the Commissioner's deficiency notice. We are convinced that the Tax Court properly defined the intangible assets and that its finding of going concern value is not clearly erroneous. We do not believe that the Tax Court decided inconsistently by finding an absence of goodwill and the existence of going concern value. These two intangible assets are separate and distinct. Also, the Tax Court did not make a finding that the total value of the tangible assets equaled the total 1964 contract price.

■ Concord Control argues that the Tax Court's finding of a five-year useful life for special tools, dies, and jigs is clearly erroneous. The Tax Court based its finding on expert testimony offered by Concord Control and on Concord Control's ability to use the special tools, dies, and jigs for approximately five years. Therefore, substantial evidence supports the Tax Court's finding.

■ The Commissioner argues that the Tax Court erred in finding that no goodwill was purchased in 1964. The Commissioner contends that the Tax Court committed an error of law by requiring an expectancy of continued customer patronage or competitive advantage in addition to excess earnings over the normal industry average to establish the existence of goodwill. No Court has adopted the Commissioner's position and there is ample authority to the contrary. *Houston Chronicle Publishing Co. v. United States*, 481 F.2d 1240 (5th Cir.

1973);  *Skilken v. Comm'r of Internal Revenue,* 420 F.2d 266 (6th Cir. 1969). Furthermore, the Tax Court referred to the lack of expected customer patronage or competitive advantage only as an alternative basis for its finding.

The Commissioner argues that the Tax Court's finding of no goodwill is clearly erroneous. We have found substantial evidence in the record supporting the Tax Court's finding.

■ Though the Tax Court properly found the existence of going concern value, we believe a remand is necessary for the Tax Court to explain its method of calculating the amount of going concern value. We are unable to discern from the Tax Court's opinion the method it used to calculate the going concern value or why it chose that method. The Tax Court determined apparently that ten percent of the purchase price of realty was going concern value and that twenty percent of the purchase price of all other property was going concern value. The difference between real property and other property for the purpose of calculating going concern value is not explained. It is also not explained how the Tax Court chose those particular percentages.

The *Cohan* rule cannot save the Tax Court from explaining its calculation of going concern value. *Cohan v. Comm'r of Internal Revenue,* 39 F.2d 540 (2d Cir. 1930). We have never accepted or rejected the *Cohan* rule and decline to do either now. *Estate of Mercure v. Comm'r of Internal Revenue,* 448 F.2d 922 (6th Cir. 1971). The *Cohan* rule was developed to spare the taxpayer when the taxpayer establishes his entitlement to a deduction or to business expenses, but cannot substantiate the exact amount because of no recordkeeping. In our case, Concord Control, or its predecessors, possessed numerous relevant records and presented, or could have presented, much evidence to the Tax Court on the amount of going concern value or conversely the value of the tangible assets. Though we realize that there are few guidelines for the Tax Court to follow in assessing the amount of going concern value and that the

Tax Court may be compelled to make broad estimates, it must at least explain its method of valuation and its reasons for choosing that method. *Miami Valley Broadcasting Corp. v. Comm'r of Internal Revenue,* 594 F.2d 556 (6th Cir. 1979).

Accordingly, IT IS ORDERED that the case be, and hereby is, remanded to the United States Tax Court for proceedings consistent with this order. In all other respects, the order of the Tax Court is affirmed.