IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs on March 26, 2002

# T.H. ENGINEERING & MANUFACTURING, INC., and RON TOURTE, v. CHRIS A. MUSSARD, individually and doing business as T.H. ENGINEERING & MANUFACTURING, L.L.C.

**Direct Appeal from the Chancery Court for Knox County**
**No. 146015-1      Hon. John F. Weaver, Chancellor**

**FILED MAY 23, 2002**

**No. E2001-02406-COA-R3-CV**

Plaintiff sued on promissory note.  Defendant counterclaimed on grounds of breach of contract, violation of Tennessee Consumer Protection Act, and fraud.  The Trial Court entered Judgment for plaintiff and defendant has appealed.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Arthur F. Knight, III, Knoxville, Tennessee, for Appellants.

John P. Newton, Jr., Knoxville, Tennessee, for Appellees.

**OPINION**

Plaintiffs' action on a promissory note for the sale of plaintiffs' business and assets to defendant resulted in a Judgment in favor of the plaintiff for the balance owing on the promissory note, plus attorney's fees.

When sued, the defendants answered and counter-claimed, alleging theories of misrepresentation and fraud, breach of contract, violation of the Tennessee Consumer Protection Act, and breach of a non-compete covenant previously executed in connection with the sale of the business.  Summary Judgment was granted to plaintiffs on the issues of the Tennessee Consumer

Protection Act and breach of the covenant not to compete. The remaining issues were tried which resulted in Judgment for the plaintiffs.

The Trial Court rendered a detailed Memorandum Opinion and denied defendants' request pursuant to Tenn. R. Civ. P. 52.01 for findings of fact and conclusions of law.

Defendant who purchased the business is a CPA and holds an MBA with an extensive business and financial business and management background. The parties engaged in prolonged negotiations for the purchase of the business and a deal was struck when defendant offered $175,000.00 in cash and a note for $125,000.00. The final purchase and sales agreement executed by the parties allocates the total purchase price as follows:

$145,000.00 to inventory, equipment, jigs, and supplies
$105,000.00 to consulting agreement
 $50,000.00 to a non-compete agreement.[1]

The evidence showed that plaintiff had sales in 1994 of $194,000.00, in 1995 of $300,000.00, in 1996 of $380,000.00, and in 1997 $320,000.00. The amount of the 1998 sales was sharply disputed at trial. Defendant claims that plaintiff represented 1998 sales of $402,000.00. Defendant testified he was provided with a 1998 sales register which indicated sales of $402,000.00. However, later in the negotiations, plaintiff told him the business was down 15 to 20%, but indicated this was due to the loss of a key employee, and not due to a downturn in the market. Defendant testified he accepted these explanations without any attempt at verification. He conducted what he called a meticulous evaluation. Plaintiff offered defendant the opportunity to examine any books, records or other documents or materials, or to meet with his accountant, but defendant did not feel any of this was necessary. Defendant argues the invoice register for 1998 contains duplicated invoices, but the Court found that no direct proof was ever introduced that any invoice was invalid or otherwise not legitimate. Defendant contends the true figure for the actual sales in 1998 was $122,000.00 less, or closer to $280,000.00 and that had he known the sales were that low he would have walked away and never bought the company. In 1998, the federal tax return shows $280,000.00 income. A profit and loss statement for 1998 prepared by the accountant shows gross sales of $402,000.00. However, defendant's admission that he never had this document before the contract was entered and could not have relied upon it as a misrepresentation, was an important fact in the Court's Opinion. The proof is also disputed whether defendant ever requested the first quarter 1999 sales figures, which were $40,710.00. The record shows that a business broker did have this information, and provided it upon request to another interested buyer.

---

[1]The allocation of the purchase price for purposes of §1060 of the Internal Revenue Code signed by the parties, allocates the price as follows: Inventory $22,851.00, Furniture, Fixtures and Equipment $171,149.00, Covenant Not to Compete $1,000.00, Consulting Agreement with Ronald W. Tourt $105,000.00.

The gravamen of defendants' appeal[2] seems to be either breach of contract in that the purchaser did not receive an ongoing and profitable business, with damages for loss of goodwill, or a litany of misrepresentations which together fraudulently induced him to enter into the deal and purchase a dead or dying business.

Our review of non-jury cases is *de novo* with a presumption of correctness of the trial court's findings. Absent an error of law, this Court will affirm the lower court unless it finds that the evidence preponderates against the findings of the trial court. Tenn. R. App. P. 13(d); *Grand Valley Lakes Property Owners Ass'n v. Cary*, 897 S.W.2d 262 (Tenn. Ct. App. 1994).

Defendant argues the Trial Court erred in refusing to consider findings of facts and conclusions of law in accordance with his Motion, pursuant to Tenn. R. Civ. P. 52.01. In this case, the Memorandum Opinion provides a clear and detailed summary of a four-day trial, technical exhibits and respective contentions of the parties. Our review persuades us the Trial Court adequately fulfilled the requirements of Tenn. R. Civ. P. 52 in its Memorandum Opinion. As we observed in *Hodge v. provident Life and Acc. Ins. Co.,* 664 S.W.2d 297, 300 (Tenn. Ct. App. 1983): "It is not necessary for the trial court to treat separately each fact or question at issue so long as the findings as a whole cover all relevant facts necessary to a determination of the case."

Defendant also contends the Trial Court erred in holding that he could not recover damages for loss of goodwill because none of the purchase price was allocated to goodwill in the final purchase and sales agreement.

The Trial Court held that defendant sought damages for a breach of contract for the loss of goodwill, yet the purchase and sales agreement allocated nothing for the purchase of goodwill among the list of assets.[3] In fact, an earlier draft listed goodwill among the assets, but assigned no value to it. Goodwill has been defined as:

> the goodwill of a business is a reasonable expectation of its continued profitable operation. Many factors are involved; the name of the firm, its reputation for doing business, the location, the number and character of its customers, the former success of the business, and many other elements which would be advantageous in the operation of the business. Goodwill is a property right which may be sold.

*Young v. Cooper*, 203 S.W.2d 376, 384 (Tenn. Ct. App. 1947).

---

[2]The defendants' brief does not set forth a statement of the issues presented for review in accordance with Tenn. R. App. P. 27(a)(4).

[3]The Court opined that defendants' position would have been stronger if the document had simply stated the purchase was for "an ongoing business with a solid customer base."

In a case similar to this case, *Concord Control, Inv., v. Commissioner*, 615 F.2d 1153 (6th Cir. 1980), a sales contract did not list goodwill as an asset in the books or in the contract for the sale of the business. The Tax Court found that the company could not expect continued patronage or competitive advantage and therefore possessed no goodwill, but that it did have a substantial going concern value. It was earning money, had a trained staff of employees, a product line ready for sale, and equipment ready for use and various tangible assets. The 6th Circuit upheld the Tax Court's finding and agreed that these two intangible assets, i.e, "goodwill" and "going concern" are entirely separate and distinct concepts.

We find this issue to be without merit.

Defendant also asks the Court to find that the purchase of the sales agreement is ambiguous in order to find damages for the purchase of goodwill, absent an express allocation. In this case the Trial Court correctly observed the merger clause of the Agreement "contains the entire understanding of the parties, and there are no other oral statements, understandings or representations relied upon by the parties hereto." Moreover, defendant's arguments are proscribed by the parol evidence rule. *See Faithful v. Gardner*, 799 S.W.2d 232 (Tenn. Ct. App. 1990).

Defendant further asserts that the Trial Court erred in ruling that defendant failed to establish an element of damage in its fraud and breach of contract counter-claim.

False statements alone will not affect the validity of a transaction. The injured party must have relied upon false statements and the reliance must have been reasonable under the circumstances. *Security Federal Savings and Loan Ass'n v. Riviera Ltd.,* 856 S.W.2d 709 (Tenn. Ct. App. 1992). The evidence establishes that the true state of the business was never concealed from defendant, and that his reliance upon any alleged misrepresentations was not reasonable in the light of all the information. According to defendant's testimony, he only evaluated one factor as important, i.e., sales. He was offered an opportunity to examine all books and records, but deemed them inconsequential. He declined to investigate credit history, customer base, accounting records, market competitions or labor problems. He never ran an annual total for the 1998 invoice register, despite his meticulous spread sheet analysis. Significantly, on cross examination, he admitted that he had the mid-year financial reports of January-July, 1998, which evidenced sales of only $181,000.00, which extrapolated to much less than $402,000.00 for the year. He admitted he had concerns about the company but did no investigation into the decline of the market, loss of customers, or presence of competitors.

Plaintiff's statements about the 1998 sales and the reasons for the decline in sales due to the loss of a key employee, were in the nature of estimations and opinions of present and future 1999 sales, which do not establish a basis for fraudulent representation on this record. Reliance upon statements of opinion or estimates of future sales, and where the means of information have been furnished and available, will not substantiate a subsequent claim based upon fraud. *Pakul v. Barnes*, 631 S.W.2d 436 (Tenn. Ct. App. 1981). Statements of opinion, puffing, sales talk, conjecture, or representations concerning future events are not actionable, even though they may later turn out to

be inaccurate. *McElroy v. Boise Cascade Corp.,* 632 S.W.2d 127 (Tenn. Ct. App. 1982).

The record reveals that defendant became aware of what he alleges were fraudulent misrepresentations within a short time after the closing of the sale. However, he decided to continue on in the business and change the product line and develop a new customer base. By doing this, he waived any right to rescission and made it implausible to establish damages as he substantially changed the business from what he had purchased for a new endeavor. The evidence supports the Trial Court's findings that defendant did not prove by a preponderance of the evidence either a breach of contract or material fraudulent misrepresentations.

Finally, defendant argues that the Trial Court should have applied the missing witness rule for the plaintiff's failure to call Marcus Lee, the company's accountant who prepared the corporate tax returns and financial statements. The Trial Court's response was that assuming *arguendo* the rule was applicable, it did not change the Court's opinion upon consideration of all the evidence.

The missing witness rule provides that failure of a party to call an available witness possessing peculiar knowledge concerning the facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness would naturally be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference that the testimony of such uninterrogated witness would not sustain the contention of the party. No such inference arises where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence; or when an adverse inference would be improper for any other reason. . . ."

The Trial Court based its findings of fact upon a plethora of evidence and, at best, any testimony by the so-called "missing witness" would have been in the nature of corroborative and cumulative testimony, as there was considerable evidence before the Court on the pertinent issues to be determined. We find this issue to be without merit.

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to Chris A. Mussard.

_____
HERSCHEL PICKENS FRANKS, J.

-5-